## State of Ohio ex rel. Duffy, Atty. Gen. v. Arnett.

October 24, 1950.

As Extended on Denial of Rehearing December 15, 1950.

W. J. Baxter, Judge.

404

Herbert S. Duffy and Stanley Powell for appellant.

William E. Francis and George T. Ross for appellee.

JUDGE KNIGHT—Reversing.

Appellant, the State of Ohio, by its attorney general and special counsel employed in Kentucky by him, filed this action against the appellee to recover certain monies allegedly owed by appellee to the Industrial Commission of the State of Ohio as premiums for workmen's compensation insurance coverage extended to appellee. The trial court sustained a general demurrer to the appellant's final amended and substituted petition and upon appellant's failure to plead further entered judgment for the appellee, from which this appeal is taken.

Appellant's amended and substituted petition alleges in substance that the appellee, a resident of Kentucky, was from February to June, 1938, engaged as a contractor in clearing land at the Atwood Reservoir near Sherrodsville in the State of Ohio; that the appellee applied to the Industrial Commission of the State of Ohio for workmen's compensation insurance coverage, the application containing statements of the nature of the work to be done, the estimated size of appellee's payroll as $5,000 and the estimated number of his employees; that based on this application, the Industrial Commission assigned a premium rate to appellee and computed the advance premium to be $1,301, which was paid by the appellee; that appellee promised to submit to the Industrial Commission the amount of his payroll, in reliance on which the Industrial Commission continued the insurance coverage to the appellee to July 23, 1938; that on completion of the contract, appellee notified the Industrial Commission that his payroll was $24,991.38; that the Industrial Commission notified appellee that he owed appellant $5,337.01 (including $135.25 interest charge); that in December 1938, appellee made an additional payment of $500, leaving a balance due of $4,701.76; wherefore the appellant prayed judgment for $4,701.76 and interest thereon at 6% from August 9, 1938.

The applicable statutes and code provisions of the

State of Ohio were pleaded or filed as exhibits with the pleadings. It appears therefrom that all employers of three or more persons in Ohio are required by law to take out workmen's compensation insurance with the Industrial Commission of the State of Ohio unless they can qualify as self-insurers under the rules of the Industrial Commission and that, even though qualifying as self-insurers, they are liable for certain contributions toward the reserve fund.

The appellee has three grounds upon which he relies to sustain the trial court's ruling.

(1) The statutes of the State of Ohio which give rise to the alleged cause of action prescribe, in effect, that the exclusive jurisdiction shall be in the Ohio courts and the appellant has no remedy in the courts of Kentucky.

(2) The courts of Kentucky will not act as an agency for the collection of the taxes of a foreign jurisdiction; and the claim asserted by the appellant is in the nature and category of a claim for taxes and should be so treated by this court.

(3) A determination of the Ohio Industrial Commission is made under a "local" statute and is not enforceable in the courts of Kentucky as a judgment.

I

The first ground relied on to support the ruling of the chancellor is based on two arguments: (a) the attorney general of Ohio has no authority to institute or appear in this action and (b) the statute giving rise to the cause of action impliedly limits enforcement to the Ohio courts.

Section 333 of the Ohio General Code provides: "The attorney-general shall be the chief law officer for the state and all its departments. No state officer, board, or the head of a department or institution of the state shall employ, or be represented by, other counsel or attorneys-at-law. The attorney-general shall appear for the state in the trial and argument of all civil and criminal causes in the supreme court in which the state may be directly or indirectly interested. When required by the governor or the general assembly, he shall appear for the state in any court or tribunal in a cause

in which the state is a party, or in which the state is directly interested. Upon the written request of the governor, he shall prosecute any person indicted for a crime." Section 336 of the Ohio General Code authorizes the attorney general to appoint special counsel to represent the state in civil actions, criminal prosecutions or other proceedings in which the state is a party or directly interested, and section 336-1 authorizes the attorney general to employ special counsel to collect claims due the state.

The appellee argues that the attorney general is without authority to bring this action here because he has not been required to do so by the governor or the general assembly of Ohio. We think the contention is without merit. By section 333 the attorney general is declared to be the chief law officer of the State of Ohio. Such a designation carries with it the authority to act as such in any case affecting the State of Ohio unless he is prohibited from so acting. The fact that the statute requires him to appear in certain cases and gives the governor or the general assembly power to require his appearance in others does not militate against his appearing on his own motion in cases affecting the rights of the State of Ohio. In the case of State, ex rel. Crabbe, Atty. Gen., v. Plumb et al., 116 Ohio St. 428, 156 N.E. 457, a similar contention was apparently made, that the attorney general did not have the authority to bring mandamus proceedings. The Ohio court denied this argument. See also State ex rel. Walton v. Crabbe, 109 Ohio St. 623, 143 N.E. 189.

Section 1465-75 of the Ohio General Code provides for the collection of unpaid premiums as follows: " * * * If said amount is not paid within ten days after receiving such notice, the commission shall certify the same to the attorney general, who shall forthwith institute a civil action against such employer in the name of the state for the collection of such premium. * * *" The statute then goes on to set out what allegations shall be sufficient, the times within which pleadings shall be filed after the institution of the action and that the case shall be advanced on the docket for trial. The statute also has provisions for service on an agent or employee of a nonresident defendant. The appellee urges that the provisions as to procedure impliedly limit the cause

of action to the Ohio courts. We cannot so read this section. There is a substantive right created which is independent of the procedure to be used in the Ohio courts. A statutory cause of action which is otherwise transitory should not be construed as local merely because of accompanying procedural provisions intended to be applicable only to the courts of the state creating the cause of action, where the remedy is not an unusual one or one not uncommon to the law of the forum.

## II

The second contention of the appellee, and the one on which he principally relies in his brief, is that the claim for which the State of Ohio is suing is one for taxes and that one state will not allow its courts to be used to collect taxes for another state. He cites no case either from Ohio or any other jurisdiction which holds that premiums due a state industrial commission for workmen's compensation premiums are taxes. Appellee cites cases from various jurisdictions which almost uniformly hold that unemployment compensation "contributions" are "taxes" and he reasons that by analogy premiums due the Industrial Commission for premiums on workmen's compensation are likewise "taxes." As sustaining such analogy he points out that section 1465-77 of the Ohio General Code, gives liability for premiums the same preference as tax claims against the employer's assets; that penalties and liens are provided as additional means for enforcing payment; that the Ohio Workmen's Compensation Law provides for obtaining revenue for a public purpose; that the employer's contributions in the form of premiums are compulsory and that even those who qualify as self-insurers must pay a certain amount of the premium, otherwise payable, into a "surplus" fund for the benefit of workmen having no connection with the contributing employer. Recognizing the analogies thus urged, we do not think it is incumbent on this court to become the first one to decide the tax status of the premiums paid under Ohio's Workmen's Compensation Law when even that state has not passed on the question. Whether it is a tax, as appellee contends, or whether it is a mere contractual obligation to the state, as appellant contends, it is not necessary for us to decide.

But assuming that the claim is one for taxes, we

are constrained to hold that the courts of this commonwealth should act as a forum for the enforcement of tax claims of other states of the United States. The weight of authority is to the contrary, see Anno. 165 A. L. R. 796; but we believe that the better rule is set out in State ex rel. Oklahoma Tax Commission v. Rodgers et al., 238 Mo. App. 1115, 193 S. W. 2d 919, 165 A. L. R. 785. After an exhaustive review of the history of the rule that one state will not enforce the revenue laws of another, the opinion in that case concludes that the reasons advanced to support the rule are not valid grounds on which to deny enforcement of revenue laws as between the states of the United States. That opinion further points out that there is a very real difference between revenue and penal laws and that they are similar only in that they are both state regulations of a civic duty.

The Supreme Court of the United States has never ruled on the question as to whether full faith and credit apply to the enforcement of foreign tax statutes. In Milwaukee County v. M. E. White Co., 296 U. S. 268, 56 S. Ct. 229, 80 L. Ed. 220, that court held that a tax *judgment* of one state must be given full faith and credit in the courts of other states. The reasoning of this case was used in support of the opinion in State v. Rodgers, supra. The question was expressly left open by the Supreme Court in Moore v. Mitchell, 281 U. S. 18, 50 S. Ct. 175, 74 L. Ed. 673, affirming the decision of the Circuit Court of Appeals, 2 Cir., 30 F. 2d 600, 65 A. L. R. 1354, on the ground that the plaintiff lacked capacity to sue. The Circuit Court of Appeals had held that one state was precluded from acting as a collector of taxes for a sister state; and a concurring opinion set out the view that it might be embarrassing for the courts of one state to be called upon to scrutinize the relations of a foreign state with its citizens. As pointed out in State v. Rodgers, supra, this objection is not valid because the foreign state is not only not objecting but is seeking relief in the forum, and the taxpayer may assert the same defenses in the forum as he could in the taxing state.

The Restatement of the Law, Conflict of Laws, section 610, Action on Foreign Public Right, formerly under comment C set out the rule "No action can be maintained by a foreign state to enforce its license or revenue laws, or claims for taxes." In the 1948 supplement to the

Restatement, however, the American Law Institute expressly deletes comment C and adds a caveat to the main section to the effect that ''the Institute expresses no opinion whether an action can be maintained by a foreign state on a claim for taxes.'' The Institute further goes on to state that if a position were to be taken, it would seem desirable to state a view contrary to the former comment C, citing State v. Rodgers, supra, and Milwaukee County v. M. E. White Co., supra. An article entitled ''Conflict of Laws—Enforcing Tax Laws · of Sister States,'' 47 Michigan Law Review, page 796, fully discusses the question and favors the rule as followed by the Missouri court in the Rodgers case.

In the midst of the conflicting decisions of other jurisdictions, we take our stand with the modern trend as enunciated by the Missouri court in the well reasoned opinion in the Rodgers case, supra [238 Mo. App. 1115, 193 S. W. 2d 927], which after reviewing the reasons other courts had given for the rule that foreign penal and tax laws will not be enforced, then gave as its reason for not following those decisions: ''In our opinion, the elimination of the fore-going considerations, which are said to prompt courts to refuse to enforce foreign penal laws, as reasons for excluding suits of this kind, leaves no valid justification for not permitting a suit in this state for a tax lawfully levied by another. The simplest ideas of comity would seem to compel such a result, and modern conditions ·demand it. The contrary doctrine was the product of the commercial world, and arose at a time when there was a great commercial rivalry and international suspicion. It was applied as between wholly sovereign states. It has no place in a union of states such as the United States, where the interest of both the state and taxpayer will be protected from arbitrary power by the provisions of the federal Constitution. The taxpayer who enjoys the protection of government should bear his share of the expense of maintaining the government, and should not be permitted to escape his obligation by crossing state lines.''

If it be said that the State of Ohio, in collecting the premiums for the administration of its Workmen's Compensation Law is acting in a proprietary rather than a governmental capacity, then it would seem there could be no question of its right to bring this suit against one

with whom it has entered into a contractural relationship. In its brief, appellant refers us to the case of State of Ohio v. Wilcox Construction Co., City Ct., 100 N. Y. S. 2d 508, which appears to be on all fours with the case at bar. That was a suit filed in the city court of the City of New York by the State of Ohio against a contractor for $1059.16 for a balance due on premiums claimed due the Ohio Industrial Commission by the defendant. As his principal defense, defendant pleaded that plaintiff had no legal capacity to sue in the courts of the State of New York for the claim asserted in the action, as the sole sources of its authority were the laws of Ohio. Perhaps the amount involved was not sufficient for an appeal or for some other reason the case appears to have been reported only in a local publication, New York Law Journal of February 21, 1950. We quote the following excerpts from the court's opinion in that case, as set out in appellant's brief: "The defendant subscribed to the state fund of the State of Ohio for coverage in connection with a policy of workmen's compensation insurance, and agreed to pay certain premiums therefor. The defendant failed to pay such premiums and plaintiff now sues therefor, basing its claim on defendant's subscription contract. It is well settled law that a State may sue in the Courts of another State on a contract or proprietary claim; this does not involve a governmental interest of the State of a kind where the action is required to be brought in the foreign State, nor is the claim in suit to be confused with a claim by a foreign State to enforce its license or revenue laws or claims for taxes or penalties; it is a simple claim on contract which is transitory in nature, and it follows that this Court has jurisdiction of the subject matter of the action (cf. American Law Institute, Restatement of the Law of Conflicts of Laws, sec. 610, especially comment (f), and N. Y. Annotations to the same Restatement, sec. 610 and cases there cited)."

In comment (f) sec. 610, Conflict of Laws in the Restatement referred to in the above opinion, it is said: "f. Proprietary Claims of State. A state may sue in the courts of another state for breach of contract made with it by a private person, or for damages for any tort committed by such person against its property, or to recover its own property from such person who withholds it. These are not governmental interests of the

state, and are, therefore, covered by the rule stated in Sec. 607.''

As we see it, whether this action is one to collect a tax due a sister state or one to enforce a contractural obligation, it is one in which appellee, a nonresident of Ohio but temporarily doing business there, submitted himself to the laws of that state for the purpose of carrying on that business. In doing so he incurred certain obligations to that state which the state is now suing to recover. It would be manifestly unjust to allow him to escape his obligations by leaving the state where it was incurred and throwing around him the cloak of nonsuability in the state of his residence. Unquestionably he could have been sued in Ohio had he been served with process there, in which case the procedure outlined in the Ohio code would have been followed. We think this is a transitory action and the State of Ohio had the right to sue him in the state of his residence, a forum more favorable to him, and the procedure of the forum will, of course, control. He will not be heard to say that since the laws of Ohio prescribe certain procedure to be followed by its courts in this character of case, no other method may be used in another state to collect a debt allegedly due it. The construction of this contract and the obligation of the parties under it will, of course, be governed by the laws of Ohio and appellant can enter any defenses to the suit which he may have.

### III

The third contention of the appellee, that the determination of the Ohio Industrial Commission is made under the ''local'' statute and is not enforceable as a judgment, need not be considered since there is no question here of giving to that determination the force and effect of a judgment. The defendant may raise any defenses to the merits which he may have.

For the reasons set out above, it is our opinion that the lower court erred in sustaining the demurrer to appellant's amended, substituted and reformed petition. Wherefore the judgment is reversed for further proceedings consistent herewith.

On petition for rehearing, KRS 131.230 was for the first time brought to the court's attention. That statute, enacted in 1938 and therefore in force when this litiga-

tion was begun, reads as follows: "Interstate comity. The courts of this state shall recognize and enforce statutes concerning taxation constitutionally imposed by other states that extend like comity."

A similar statute, KRS 135.190, was enacted by the 1950 legislature which was after this litigation was begun. Both statutes command the courts of this state to recognize and enforce the tax statutes of other states where that state extends a like comity to Kentucky. There is nothing in the record to show that Ohio has refused to recognize or enforce the tax laws of this state. Appellee cites the case of State of Indiana, to Use of Cone, v. John, 5 Ohio 217, 219, as indicating that Ohio courts would not recognize or enforce the tax laws of another state. However, that case merely held that the Ohio courts would not enforce the penal laws of another state, a question not involved in the present case. We see a clear distinction between enforcing another state's penal laws and enforcing its tax laws.