260 S.W.2d 821 (1953)
STATE OF CALIFORNIA ex rel. HOUSER, Atty. Gen. of California,
v.
ST. LOUIS UNION TRUST CO.
No. 28589.
St. Louis Court of Appeals. Missouri.
September 15, 1953.
Motion for Rehearing or to Transfer to Denied and Opinion Modified October 16, 1953.
*823 Rassieur, Long & Yawtiz, Charles D. Long, Milton Yawitz, St. Louis, Robert H. Batts, St. Louis, of counsel, for appellant.
E. Miltenberger Cain, St. Louis, Walter H. Miller, Los Angeles, Cal., of counsel, for State of California.
Motion for Rehearing or to Transfer to Supreme Court Denied and Opinion Modified October 16, 1953.
ARONSON, Special Judge.
The State of California, by its Attorney General, brought this action to collect an alleged deficiency in payment of inheritance tax claimed to be due it from the probate estate in that state of Mary Agnes Rogers, deceased; and was successful in the Circuit Court in obtaining judgment, including interest, for $5023.61 against defendant St. Louis Union Trust Company, trustee. (Originally there were other defendants, but the trial court dismissed the case as to them, and plaintiff has not appealed, so they are now out of the case.) Defendant trustee appealed to the Supreme Court of Missouri, which court determined that it was without appellate jurisdiction and transferred the cause here, in an opinion reported at 248 S.W.2d 592.
The pleadings were summarized by the Supreme Court as follows, 248 S.W.2d loc. cit. 593, 594:
"The facts material here as alleged in the petition are to the following effect. One Mary A. Rogers executed an Indenture of Trust on July 8, 1936, naming defendant Trust Company as trustee and the other defendants contingent beneficiaries; the trust instrument providing that said grantor was to receive the net income from said trust estate for life and also that said grantor reserved the right to alter, or amend, or revoke the terms of said agreement in whole or in part, which said provisions subjected said trust estate *824 to the Federal estate tax law, 26 U.S.C.A. § 800 et seq., and the California inheritance tax law, Revenue and Taxation Code Cal. § 13301 et seq. Mary A. Rogers died on June 14, 1945, a citizen and resident of Los Angeles County, California, having moved her residence and domicile from St. Louis in 1920. The fair market value of the assets of said trust estate in the hands of said Trust Company was $97,614.90 on June 14, 1945, and consisted of intangible property, stocks and bonds. The last will and testament of Mary A. Rogers was probated in the Superior Court of Los Angeles County, California, and her estate in California was administered by the Public Administrator of said county. Under proceedings had in conformity with the applicable laws, Federal estate taxes in the amount of $5,594.26 and California inheritance taxes, following a report of the inheritance tax appraiser and the order, judgment and decree of said Superior Court, in the amount of $6,230.96 were found due the State of California out of the estate of said Mary A. Rogers, Deceased. The payment of said Federal estate tax and $1,881.21 on the inheritance tax due the State of California exhausted the assets in the hands of said administrator. There were no persons or property subject to process of the courts of California for the collection of the deficiency of $4,349.75, principal amount, and interest, on the inheritance tax due the State of California. Plaintiff instituted the instant suit in the Circuit Court of St. Louis County against the individual defendants for the balance of said unpaid inheritance tax, apportioned to and due from the respective defendants, `and against defendant St. Louis Union Trust Company, as trustee and transferee' for the total of said deficiency and interest.
"The defendants joined in one answer. They denied that Mary A. Rogers had moved her residence and domicile from the city of St. Louis, Missouri; and alleged, among other things, that said Superior Court of the County of Los Angeles, State of California, was without jurisdiction over the assets of the trust estate in the possession of defendant Trust Company and was without jurisdiction over the person of any of the individual or corporate defendants; that the `alleged judgment for inheritance taxes' was null and void and of no effect on the defendants (referring to the Report of Inheritance Tax Appraiser and the Order of the Superior Court of the State of California assessing the inheritance tax in the estate of Mary A. Rogers, Deceased) because said court was without jurisdiction over defendants or the property comprising the trust estate; `and defendants further state that said alleged judgment was without due process of law;' and that the Circuit Court of the County of St. Louis was without jurisdiction to enforce the claim of plaintiff, that no provision or procedural machinery existed for said court to assess or determine inheritance taxes alleged to be due from defendants to the State of California."
We must review the case, tried without a jury, upon both the law and the evidence, as in a suit of an equitable nature; and not set the judgment aside unless clearly erroneous, giving due regard to the finding of the trial court on the facts. Section 510.310 RSMo 1949, V.A. M.S.; Cockrill v. Buchanan, Mo.App., 259 S.W.2d 696.
The only fact issue which was actually litigated was the question of the domicile of the late Miss Rogers. As to this, we agree with the learned trial court that she was, at the time of her death in 1945, a resident of California. The testimony of her cousin, Mrs. Florence May Montgomery, as well as that of her friend, Mrs. Mary E. Aldrich, and of the hotel clerk, Mr. Leslie Jeffries, (all by deposition) is clearly of more weight and cogency than her reference to Missouri as "home" *825 in the several letters introduced in evidence by the trust company (the latest of which was written in 1941). She actually remained in California for approximately the last quarter-century of her life, with the sole exception of the occasion in 1936, when she brought the ashes of her late sister to St. Louis for burial; on which occasion she executed the trust instrument, mentioned in the pleadings.
Whether she was a resident of California in 1936 is less clear, for neither Mrs. Aldrich nor Mr. Jeffries knew her at that date, and there is naught but Mrs. Montgomery's testimony on the subject. However, we deem it unnecessary to decide her residence in 1936. The important fact is her residence when she died on June 14, 1945, and we are satisfied that she was a Californian then. She had declined to spend her declining years in Missouri, and expected to die in California, as her letters indicate. The inferences to be drawn from her very long actual stay in California supply all elements necessary for a finding that she died a domiciliary of that State. State of Texas v. State of Florida, 306 U.S. 398, 59 S.Ct. 563, 830, 83 L.Ed. 817; Riley v. New York Trust Co., 315 U.S. 343, 62 S.Ct. 608, 86 L.Ed. 1223; Spurgeon v. Mission State Bank, 8 Cir., 151 F.2d 702. She had no place of abode in Missouri; she was long located in California and intended to remain there indefinitely, at least. Lewis v. Lewis, 238 Mo.App. 173, 176 S.W.2d 556.
Since California was the state of the domicile of decedent when she died, it was proper that probate proceedings be had there. It was likewise proper that the State of California seek to assess and collect an inheritance tax, as provided in its statutes. Part 8 of Revenue and Taxation Code, Deering's California Codes Ann. § 13301, ff.
What is the nature of the California statute? In 28 Am.Jur. pp. 8-10 (Inheritance, Estate, and Gift Taxes, §§ 3, 4) it is said:
"A probate duty and its successor, the estate tax, is a tax upon the transmission of property by a deceased person. Such tax is charged upon the whole estate, regardless of the manner in which it is to be distributed. It is not a tax on what comes to the beneficiaries or heirs, but upon what is left by the decedent. It is treated as an expense of administration, as a proper disbursement by an executor or administrator, for which he will be allowed credit in his account. The estate tax must be measured by the property transferred by the decedent, that is to say, the net estate ascertained in the manner prescribed, and takes no account of the relationship of the recipient or of the amount he takes. The tax comes into existence before and is independent of the receipt of the property by the legatee or distributee.
"A tax imposed upon the clear value of the estate passing from any person who may die seized or possessed thereof is an estate tax, and what passes to the heir or devisee and to which he acquires title is his share of the estate remaining after the payment of the tax.
"Legacy and succession duties or taxes are alike in nature and essential characteristics, except that a succession tax covers both real and personal property. Such tax is an excise on the privilege of taking property by will or by inheritance or by succession in any other form upon the death of the owner. It is imposed upon each legacy or distributive share of the estate, and is never treated as an expense of administration. The statute imposing such tax does not look to the estate or interest which was ended by death, as it would in case of an estate tax, but to the estate or interest which is newly created by death. It is of the essence of such tax to determine the relationship of the beneficiary and the amount he takes or, rather, is entitled to take. There is a tax on the beneficial interest *826 of each beneficiary or heir. If there is more than one beneficiary or heir there is a separate tax on the interest of each, computed on its net clear value, and chargeable against it."
These definitions are followed in this state. Priedeman v. Jamison, 356 Mo. 627, 202 S.W.2d 900. By these definitions the California tax is a legacy or succession tax. See In re Rath's Estate, 10 Cal.2d 399, 75 P.2d 509, 115 A.L.R. 836, and In re Atwell's Estate, 85 Cal.App.2d 454, 193 P.2d 519. This inheritance tax is not a tax on property, but is an excise tax, imposed upon the privilege of receiving property on the death of the owner. 28 Am.Jur. 12. Therefore, general tax cases are not helpful as authority in litigation involving inheritance taxes. People v. Union Trust Co., 255 Ill. 168, 99 N.E. 377, L.R.A.1915D, 450.
It is further said in American Jurisprudence, Vol. 28, p. 131 (§ 263):
"The proceedings for the assessment and fixing of inheritance taxes are prescribed by the statute, as, indeed, they must be, for if no mode is provided for assessing and collecting the tax, the law cannot be executed. Under some statutes, inheritance taxes are assessed by judicial proceedings, resulting after full opportunity for presentation of evidence and a hearing, in a judgment reviewable on appeal. Some statutes, for example, provide for a hearing on the report of the appraiser and the making of such order thereon as may be proper. Other statutes provide for an appeal to a court, by a person dissatisfied with the appraisement, which may determine questions relating to valuation of property, subject to the right of appeal."
"Under California statutes, inheritance taxes are assessed by judicial proceedings resulting, after full opportunity for presentation of evidence and a hearing, in a judgment which is reviewable on appeal * * *." (Citing cases.) Worcester County Trust Co. v. Riley, 302 U.S. 292, 298, 58 S.Ct. 185, 187, 82 L.Ed. 268.
In In re Rath's Estate, supra, the Supreme Court of California said: "An order fixing inheritance taxes has the incidents of a final judgment." (Citing authorities) 75 P.2d loc. cit. 513.
California was entitled to seek an inheritance tax upon the assets which comprised the trust fund held in Missouri by defendant trust company, consisting wholly of intangible personal property. The situs of intangible personal property, by fiction of law, is always at the domicile of the owner. "A fund represented by stocks, bonds, and notes kept in a state other than that where a decedent resided which he transferred upon certain trusts to a trust company of such other state, reserving to himself an absolute power of control, may be subjected to an inheritance tax in the state of his domicile without violating the Fourteenth Amendment or the contract clause of the Federal Constitution." Am.Jur. pp. 67-68. See Bullen v. State of Wisconsin, 240 U.S. 625, 36 S.Ct. 473, 60 L.Ed. 830; Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339, 123 A.L.R. 162; Graves v. Schmidlapp, 315 U.S. 657, 62 S.Ct. 870, 86 L.Ed. 1097, 141 A.L.R. 948; Graves v. Elliott, 307 U.S. 383, 59 S.Ct. 913, 83 L.Ed. 1356; In re Newton's Estate, 35 Cal.2d 830, 221 P.2d 952, 19 A.L.R.2d 1399.
Whether or not Missouri could or would levy an inheritance tax on the trust property is immaterial here, for Curry v. McCanless, supra, and other cases, including People v. Union Trust Co., supra, recognize that there can properly be succession taxation on different bases by two or more states, respecting the same intangible personal property.
Certain proceedings were had in the Superior Court of Los Angeles County, California, in the matter of the probate estate of Miss Rogers. What is the nature of those proceedings? We have already noted that California follows the judicial-procedure method of assessing inheritance taxes. The estate was represented by a California officer, the Public Administrator.
*827 Other California officials performed various duties. No heir appeared or took part in the matter. Defendant trust company did not enter its appearance.
The Supreme Court of the United States, said, in Riley v. New York Trust Co., 315 U.S. 343, 62 S.Ct. 608, 614-615, 86 L.Ed. 1223, concerning a Georgia probate proceeding, comparable to the California proceeding here:
"While the Georgia judgment is to have the same faith and credit in Delaware as it does in Georgia, that requirement does not give the Georgia judgment extra-territorial effect upon assets in other states. So far as the assets in Georgia are concerned the Georgia judgment of probate is in rem; so far as it affects personalty beyond the state, it is in personam and can bind only parties thereto or their privies. This is the result of the ruling in Baker v. Baker, Eccles & Co., 242 U.S. 394, 400, 37 S.Ct. 152, 154, 61 L.Ed. 386. Phrased somewhat differently, if the effect of a probate decree in Georgia in personam was to bar a stranger to the decree from later asserting his rights, such a holding would deny procedural due process."
The Superior Court of California also recognizes the distinctions between judgments in rem and judgments in personam, saying, in the recent case of Rediker v. Rediker, 35 Cal.2d 796, 221 P.2d 1, loc. cit. 5, 20 A.L.R.2d 1152:
"A state court cannot dispense with the requirement of notice and hearing by labelling the proceeding `in rem' if it seeks to make the findings of fact binding upon a stranger to the earlier action. A state court may no more make its findings of fact binding on a person over whom it has no jurisdiction than it may bind him by a judgment in personam when he has not been personally served."
Nelson v. Miller, 9 Cir., 201 F.2d 277, presents an interesting dispute between the states of Florida and California and illustrates the in rem nature of probate proceedings. The Ninth United States Circuit Court of Appeals left each state in control of the property located within its own borders.
So, it may be said that the cause which was instituted in the California court was a proceeding in rem, and the judgment was binding and conclusive only as to the California assets of the decedent. Various expenses and fees were paid. The federal estate tax and the state inheritance tax were computed and assessed. The federal tax was paid in full, the state tax in part. The partial payments to the County Treasurer exhausted all the assets held by the Public Administrator. A deficiency remained unpaid; and the present action resulted.
This case is a relatively unprecedented effort to collect an inheritance tax extraterritorially. In 61 C.J. 1743 (Taxation, § 2703) it is said:
"Generally speaking, inheritance tax laws have no extraterritorial force. Statutes imposing an inheritance tax can be enforced only on subjects which are within the jurisdiction of the state, and the courts of one state will not compel the collection of inheritance taxes due under the laws of another state."
However, the foregoing was written before the decision of this court in the case of State ex rel. Oklahoma Tax Commission v. Rodgers, 1946, 238 Mo.App. 1115, 193 S.W.2d 919, 165 A.L.R. 785. The only authorities cited by the Corpus Juris writer were Commonwealth v. Huntington, 148 Va. 97, 138 S.E. 650, and State of Colorado v. Harbeck, 232 N.Y. 71, 133 N.E. 357, and other New York cases, which follow a general rule of non-acceptance of foreign tax cases, not the law of Missouri.
In State ex rel. Oklahoma Tax Commission v. Rodgers, supra, the State of Oklahoma had brought a suit in this state to collect income taxes claimed to be due from defendants who had formerly lived in Tulsa County, Oklahoma, and had filed returns *828 of their income, for the years 1933 to 1936, inclusive. The taxpayers' returns and the orders of assessment apparently based thereon were, as exhibits, attached to and made a part of the petition.
The circuit judge had sustained a demurrer to the petition, on the ground that the courts of Missouri would not entertain suits to enforce the revenue laws of another state. This court, while conceding that the weight of authority supported the trial court, reversed that holding and remanded the cause for trial. In a scholarly opinion by Anderson, J., this court reviewed thoroughly the history and development of the rule that one state will not enforce the revenue laws of another, and appraised the reasons which were claimed to support it. The distinctions between penal laws (to which the same rule more clearly applied) and revenue laws were pointed out. The court said, 193 S.W.2d loc.cit. 926: "We will not exclude a suit to enforce a revenue law unless the considerations which have been thought to preclude the enforcement of penal laws are applicable to taxing statutes."
One by one, the reasons ascribed for the rule as to penal laws were examined and were held not applicable to the revenue law situation then before this court. Upon their careful elimination, it was ruled that there was no valid justification for not permitting the suit then before the court. On the basis of comity among sister states in a federal union, and for the further reason that a taxpayer should not be permitted to escape, by crossing state boundary lines, his tax obligation to a government which had protected him, the trial court was overruled and it was ordered that the case of the Oklahoma Tax Commission proceed to trial.
We must take note of the fact that the Oklahoma-Rodgers case attracted much attention. It became the subject of at least six law review notes or comments, as listed in the first footnote.[1] In 26 New York University Law Review, 517, loc. cit. 519, it is said: "State ex rel. Oklahoma Tax Commission v. Rodgers was the first decision which expressly rejected this conflict of laws axiom" (that a state's revenue laws will not be enforced extraterritorially). " * * * Wide acclaim was given to this decision in legal periodicals, but subsequent cases in other jurisdictions continued to refuse the enforcement of tax statutes of sister states." Among the other legal periodicals which contain comment on the same case, while directly discussing subsequent decisions, are the five listed in the second footnote.[2]
It is interesting to observe that whereas the American Law Institute's Restatement of Conflict of Laws formerly said (sec. 610, c,1934 Edition): "No action can be maintained by a foreign state to enforce its license or revenue laws, or claims for taxes," there has been a change since this court's decision of seven years ago in the Oklahoma-Rodgers case; and the 1948 Supplement of the Restatement says, (page 174) "The Institute expresses no opinion whether an action can be maintained by a foreign state on a claim for taxes."
The first reported opinion on this subject after the Oklahoma-Rodgers case seems to be a trial court ruling in Delaware, City of Detroit v. Proctor, 5 Terry 193, 61 A.2d 412. There a demurrer was sustained to a petition whereby a city and its treasurer sought to enforce a personal property tax liability of a former resident. The judge declined to follow the ruling of the Rodgers case, and adhered to the proposition that revenue laws of another state were not enforceable in Delaware.
In State of Minnesota v. Karp, 84 Ohio App. 51, 84 N.E.2d 76, decided by the Court of Appeals of Ohio, First District, the suit was one to collect income taxes. The petition was held to be insufficient, because there was no allegation that defendant had *829 ever been a resident of Minnesota, nor that he had ever had any property in that state, nor that the tax was assessed against net income. The plaintiff State had merely alleged that defendant received income derived from business transacted within said State. The court did not feel it necessary either to agree or disagree with the decision in the Rodgers case.
However, the rule of the Rodgers case received the full acceptance of the Kentucky Court of Appeals in State of Ohio ex rel. Duffy v. Arnett, 314 Ky. 403, 234 S.W.2d 722. There Ohio sued to collect a sum owed by defendant to the Industrial Commission of Ohio as premiums for workmen's compensation coverage. The court, assuming that contributions to the state fund were taxes, held that Kentucky courts should act as a forum to enforce tax claims of other states. It said: " * * * we take our stand with the modern trend as enunciated by the Missouri court in the well reasoned opinion in the Rodgers case * * *." 234 S.W.2d loc. cit. 726.
The only other recent case on the subject which our research has discovered is Wayne County v. American Steel Export Co., Inc., 277 App.Div. 585, 101 N.Y.S.2d 522, wherein the Rodgers case is not mentioned. In this suit a Michigan County sought to collect a personal property tax. The suit was rejected because it is New York's "public policy not to enforce the revenue statutes of other states." A companion case is Wayne County v. Foster & Reynolds Co., 277 App.Div. 1105, 101 N.Y. S.2d 526.
Although some courts have recently made decisions not in harmony with State ex rel. Oklahoma Tax Commission v. Rodgers, supra, we remain of the opinion that it was soundly ruled. There should be no absolute bar to extraterritorial suits by states to collect any or every type of tax from former residents.
The Oklahoma-Rodgers case is now the main, if not the sole, reliance of California in the case at bar. The question is, shall the rule of that case be extended to include this case involving a different type of tax, an inheritance tax. It is to be noted that the only cases in which tax claims of States have been enforced extraterritorially are cases where the alleged tax liability had many aspects of a debt directly owed by the defendant to the State. In our earlier case between Oklahoma and Rodgers there was an income tax based on returns filed with plaintiff by defendants. In State of Ohio v. Arnett, supra, there was a claim for contributions, similar to premiums, payable to the Industrial Commission which had granted workmen's compensation insurance. In J. A. Holshouser Co. v. Gold Hill Copper Co., 1905, 138 N.C. 248, 50 S.E. 650, 70 L. R.A. 183, the state of New Jersey was permitted as a creditor to prove, in receivership proceedings, its claim for franchise taxes or annual licensing fees of a foreign corporation, but its right to a preference was denied. In Standard Embossing Plate Mfg. Co. v. American Salpa Corp., 113 N. J.Eq. 468, 167 A. 755, a New Jersey trial court chancellor permitted Delaware to establish its claim for corporate franchise taxes and allowed it as a preferred claim. (In neither of the last two cases was the question here under discussion actually decided.)
It is necessary now to ascertain the precise nature of the instant action. Is it a suit upon a foreign judgment, such as was Milwaukee County v. M. E. White Co., 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220? Is it an attempt to follow in a Missouri court the statutory procedure prescribed by California law? Is it an attempt at a third procedure distinguishable from both of the first two inquiries?
Plaintiff disclaims that this is a suit upon a California judgment. In its brief, plaintiff concedes that "the inheritance tax order of the California probate court was not and does not purport to be a personal judgment against the persons named therein and concededly will not support an action in Missouri on a foreign judgment which must be enforced under the full faith and credit clause of the Federal Constitution." (p. 3 of brief.)
*830 Plaintiff also disclaims that this is a suit of the second type, saying in its brief (p. 6) "there is obviously no Missouri statutory machinery for determining California inheritance tax," and (p. 3) "the courts of Missouri have no facilities for following the procedural requirements of the California inheritance tax law." It is conceded further in plaintiff's brief that the trial court "did not and could not repeat here all the procedures followed by the California court in complying with the California statutory recipe for an inheritance tax determination."
Thus, in effect, plaintiff contends that it here pursued, and was entitled to pursue a third procedure, viz., that it sued in Missouri to have defendant's liability for inheritance tax determined, without relying on any prior California adjudication as a judgment, but using prior California court orders as evidence or proof of its case. May this be done?
There is a clear distinction between the offer in evidence of a formal judgment as a binding and conclusive adjudication and the offer of judicial records (or other public records) as evidence entitled to some weight, i. e., as having some probative effect or as a prima facie showing of the facts therein contained. As said in 5 Wigmore on Evidence 688 (3d ed.) "the discrimination between using them (judgments) as conclusive and using them as merely admissible, is not commonly emphasized nor readily grasped." A judgment, as having the attribute of conclusiveness, can never be received in evidence against one not a party thereto or over whose person the court had not acquired jurisdiction. However, the rule seems to be otherwise as to court records other than judgments.
The very necessity which confronted plaintiff and compelled the attempted use by plaintiff of various California court proceedings and orders as evidence in this case, brings to a focus the reasons for its inability to succeed herein. Plaintiff offered in evidence as its chief reliance in this case the June 24, 1947, judgment of its Superior Court (by a "Court Commissioner" whose status and authority are not established in this record, but that issue is not before us) approving and confirming the report of its inheritance tax appraiser, finding that the market value of the property subject to inheritance tax is $98,152.27 and assessing and fixing the liabilities of named heirs (Exh. A.); and the account and report of its public administrator and petition for discharge, nothing for distribution, with order of August 9, 1948, approving said account and granting said petition (Exh. B). Parenthetically, it might be noted that although a copy of the Report of the Inheritance Tax Appraiser was attached to the petition as an exhibit, no authenticated copy of same was ever offered in evidence. However, some questions were asked concerning said report, whereby some of the contents thereof came into evidence.
Without said Exhibit A and Exhibit B plaintiff would have been without evidence of the value of decedent's estate, especially her California assets and of the computation and assessment of inheritance tax. The admissions in plaintiff's brief, heretofore quoted, reveal that no machinery existed in Missouri to adjudicate such facts.
Thus we have a situation where a right (to levy an inheritance tax) is inextricably bound up with a prescribed statutory remedy available only in California. When a legislature so ties together a right and a remedy, it is impossible for courts of any other state to exercise jurisdiction.
In Milwaukee County v. M. E. White Co., 296 U.S. 268, loc. cit 271, 56 S.Ct. 229, loc. cit. 231, 80 L.Ed. 220, the Supreme Court of the United States said, concerning the obligation to pay taxes: "It is a statutory liability, quasi contractual in nature, enforceable, if there is no exclusive statutory remedy, in the civil courts by the common-law action of debt * * *." (Emphasis ours.)
In the case of Tennessee Coal, Iron & R. Co. v. George, 233 U.S. 354, 359, 34 S.Ct. 587, 588, 58 L.Ed. 997, 999, it was said:
"There are many cases where right and remedy are so united that the right *831 cannot be enforced except in the manner before the tribunal designated by the act. For the rule is well settled that `where the provision for the liability is coupled with a provision for the special remedy, that remedy, that alone, must be employed.' Pollard v. Bailey, 20 Wall. [520], 527, 22 L.Ed. 378; Galveston, H. & S. A. R. Co. v. Wallace, 223 U.S. [481], 490, 32 S.Ct. 205, 56 L.Ed. 522; Stewart v. Baltimore & O. R. Co., 168 U.S. 445, 18 S.Ct. 105, 42 L.Ed. 537; Fourth Nat. Bank v. Francklyn, 120 U.S. [747], 753, 7 S.Ct. 757, 30 L.Ed. 828."
In accordance with this principle, it has been held that Missouri courts may not entertain proceedings brought under the Kansas Workmen's Compensation Act, and all relief under that Act must be sought in Kansas in the tribunal prescribed by the Act. Mosely v. Empire Gas & Fuel Company, 313 Mo. 225, 245, 281 S.W. 762, 767, 768, 45 A.L.R. 1223. In that case, it was said, as to the Kansas Act: "By that statute the right and remedy are so united, and the provision for liability is so coupled with a provision for a special remedy to be administered by a designated tribunal with certain specific powers given, that the remedy must be sought in the designated tribunal."
Similarly in the rather recent case of Davis v. P. E. Harris & Co., 25 Wash. 2d 664, 171 P.2d 1016, the Supreme Court of Washington ruled that the courts of that state could not entertain suits to enforce the Workmen's Compensation Law of Alaska, saying that rights created by the laws of a sister state will not be enforced if the statute creating the right provides for its enforcement by prescribed proceedings within the state of its enactment.
We find on reading the California statutes that a remedy is prescribed, and that it must be pursued in a specifically designated California court; not in any court of any state, nor even in any Superior Court in California, but in a single Superior Court, namely, in "the superior court which has acquired jurisdiction in probate of the estate of any decedent", Section 14651, Rev. and Tax Code, or if there be no estate, the superior court of the county in which the decedent resided at the time of his death. Section 14652. By Section 14501, that specified court appoints an inheritance tax appraiser, who has "all the powers of a referee of the superior court", Section 14502. He files his report in the court, and the Clerk of the Superior Court gives notice "by causing a notice to be posted at the courthouse in the county where the court holds its sessions" etc. Section 14508. Ultimately, the court enters its judgment or order fixing liability for the tax. It is needless to recite other provisions, showing that the statute prescribes a remedy in a specified California Court. This calls for application of the rule of the last cited group of cases.
A right might be created by statute giving rise to a transitory cause of action, if there is not joined to it a limited and prescribed remedy. When the right is tied to a remedy in a local court by the statute creating the right, it is not transitory. It is not a question of whether a claim for inheritance taxes could be transitory; but of whether it is transitory in the sense that suit can be brought to establish the right in any court where personal jurisdiction can be obtained or it is local in the sense that it can only be established in the local court, by provision of the very law which grants the right.
We here must find that the local-remedy provision of the California inheritance tax law bars the presentation of its suit here, on the theory which plaintiff claims to follow, which is to sue here for the tax, using California court records merely as evidence. It is merely a play on words to say that in this case, defendant could have offered evidence of the value of the probate estate, to offset or overcome the evidence offered by plaintiff. What would it have availed defendant, if defendant had wanted to seek and to present evidence as to the value of decedent's personal effects and furniture among her California assets, which were a part of her total estate? *832 Defendant could not have had an expert examination made of said assets, long since sold by the California Public Administrator. In practical effect, plaintiff would succeed in achieving binding and conclusive effect for its in rem proceedings as basis for a personal judgment in Missouri against one not a party to the probate proceedings.
In this proceeding in Missouri, it could not be the proper function of our courts to determine whether the California courts reached proper conclusions. It could only be our proper function, if plaintiff's theory were sound, to determine and adjudge defendant's liability for the tax. But for the reasons we have given, the statutory remedy is specific and limited to a single California court. The right and the procedural remedy are intertwined.
We must remember, as heretofore demonstrated, that the California inheritance tax procedure is the judicial remedy procedure, culminating in a court judgment.
There is nothing in the Inheritance Tax Statute of California which indicates that the legislature intended to create a right on which the state could sue in a foreign state, instead of being confined to a remedy in a specified superior court of California. The statute under which the Attorney-General of California asserts power to sue is a general statute, part of the Political Code of California, when this suit was brought, as Section 3671(e) thereof. It grants generally power to bring suit "to collect taxes legally due this State", without specific reference to inheritance taxes.
Incidentally, this statute has lately been amended, so that the former lack of specific reference to power to sue in other states for inheritance taxes claimed by California has been replaced by a specific denial of authority to bring suits for inheritance taxes. In the 1951 session of the California legislature, the subject-matter of Section 3671(e) was removed from the Political Code and transferred to the Revenue and Taxation Code, where it was divided into two sections, Section 30 and Section 31. Later in the same session, Section 31 was amended, so that it now reads:
"The Attorney General or an appropriate official of any political subdivision of this State may bring suits in the courts of other states to collect taxes legally due this State or any political subdivision thereof. The officials of other states which extend a like comity to this State are empowered to sue for the collection of such taxes in the courts of this State. A certificate by the secretary of state under the great seal of the state that such officers have authority to collect the tax is conclusive evidence of such authority. This section does not apply to Parts 8 and 9 of this code."
The amendment consisted in the addition to the Section of the last sentence, "This section does not apply to Parts 8 and 9 of this code." The Part 8 thus referred to is the Inheritance Tax part of the Revenue and Taxation Code; the Part 9 is Gift Tax. Thus California now expressly refrains from empowering its attorney-general to sue in other states to collect inheritance tax.
We do not base this opinion upon the 1951 amendment of the California statute, because same became effective on September 22, 1951. This date was not only after suit was filed, but even after judgment in the trial court entered on October 16, 1950; the case was already pending in the Supreme Court on defendant's appeal, prior to transfer to this court. Viewing the statute solely as one empowering the Attorney-General, we are of the opinion that the amendment did not serve to destroy the judgment. However, it does indicate a recognition by the California legislature that it never had created in its inheritance tax law a right separate from a local remedy.
Before leaving the subject of the recent statutory amendment, it might be observed that it has another aspect. The present language of Section 31 can be construed as *833 a withdrawal on the part of California of the comity formerly extended by it to other states, respecting suits for inheritance or gift taxes (if truly transitory, and not localized by union with a specified local remedy). To this date, so far as we can ascertain from the cases, no sister state has successfully brought an action in California to collect an inheritance tax. Under the new California statute, it would appear that in the future no such suit would be entertained in a California court, and comity seems withdrawn.
In summation, we find that the new type of procedure here ingeniously attempted by the plaintiff cannot be accepted because of the principle established above, that when statutory right and remedy are intertwined, as here, the prescribed remedy must be followed, and being limited by the statutory prescription to a local court, the remedy cannot be pursued extraterritorially. The claim for inheritance tax as created in California is not truly transitory (regardless of whether it might conceivably have been made so) but has been localized by the requirement of California court procedure and California judgment.
Only if a valid California judgment had been obtained, under circumstances which made it binding upon defendant (which plaintiff here has conceded is not the case) could plaintiff successfully collect in Missouri the precise type of tax here involved.
This conclusion is not in conflict with the Oklahoma Tax Commission-Rodgers case, supra, nor does it in any way limit the principle for which that case stands. Said case did not involve the rule, controlling here, that a purely statutory right inextricably joined with a local remedy, cannot be enforced elsewhere than in the statutorily-designated local tribunal. This rule was not even suggested nor considered as having any application in the cited case.
In State ex rel. Oklahoma Tax Commission v. Rodgers, supra, this court did not hold that every tax suit brought by a foreign state must inevitably be entertained and brought to a conclusion desired by the plaintiff. Possible procedural difficulties were recognized, 193 S.W.2d loc. cit. 926; and nothing was said to rule out a consideration of the rule of law which is decisive here, under the California statute.
This case has many other complex problems. The defendant-trust company was not in any way named as a party in the California court orders; yet these orders were presented in evidence against it. The trial court entered judgment in favor of all the individual defendants, sued as heirs, and yet found against the trust company. These circumstances raise interesting legal questions; but the controlling rule that the statutorily-created inheritance tax right of California can only be asserted in the statutorily-prescribed court makes it unnecessary to resolve them.
For the reasons noted, the judgment of the trial court must be, and it is, hereby reversed.
BENNICK, P. J., and ANDERSON, J., concur.
NOTES
[1] 34 Calif.L.Rev. 754; 47 Columbia L.Rev. 1013; 41 Ill.L.Rev. 439; 31 Minn.L.Rev. 93; 25 Tex.L.Rev. 88; 15 Kan.City L. Rev. 52.
[2] 47 Mich.L.Rev. 796; 50 Mich.L.Rev. 334, 39 Ky.L.J. 472; 97 U.Pa.L.Rev. 435; 10 U.Pitts.L.Rev. 205.