(No. 34397.—

THE CITY OF DETROIT *et al.*, Appellants, *vs.* IRVING GOULD *et al.*, Appellees.

*Opinion filed November 20, 1957.*

SUEKOFF, FROST & SPIEGEL, of Chicago, (RAYMOND I. SUEKOFF AND MORRIS D. SPIEGEL, of Chicago, and JOSEPH MAISANO, of Detroit, Michigan, of counsel,) for appellants.

SCOLNIK & LAFFERTY, of Chicago, (AVERN B. SCOLNIK, and JOSEPH S. LAFFERTY, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The city of Detroit, Michigan, and its treasurer, plaintiffs in this cause, brought action in the circuit court of Cook County, Illinois, to recover personal property taxes for 1954 and 1955 based upon the Michigan general tax laws, the charter of the city of Detroit, and the municipal code of the city of Detroit. It was alleged that the defendant, now residing in the State of Illinois, did in 1954 and 1955 reside within the city of Detroit in the State of Michigan and the taxes were assessed against personal property owned by the defendant and located in the city of Detroit during those years. Defendants filed a motion to dismiss the complaint on the grounds that the revenue laws of one State have no force in other States, that the tax liability is not a contractual liability, that Illinois courts will not take jurisdiction of an action to enforce the revenue laws of another State, and that the complaint did not allege a judgment entitled to full faith and credit had been obtained in the Michigan courts against the defendant. The motion was sustained and the trial court dismissed the complaint. By this motion defendant did, in fact, present a constitutional question. Direct appeal is therefore prosecuted to this court.

It is provided by section 1 of article IV of the constitution of the United States: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect

thereof." A construction of the Federal constitutional provision was therefore ·in issue in the order of dismissal entered in the trial court. It is from that order of dismissal that this appeal is now taken.

It is true that this action is not brought from any judgment of the courts of Michigan to which Illinois is requested to give full faith and credit, but is grounded upon statutes of the State of Michigan and of municipal corporations of that State. The applicable statutes of the State of Michigan provide that personal property should be assessed in the township in which the owner resides on the first day of January of the year for which the assessment is made, the taxable status of persons and personal property shall be determined as of the first day of January and that said date shall be the tax day in all assessing districts including cities; the assessing officer of each city shall assess the taxes apportioned to his township or assessment district according and in proportion to the valuations entered by the board of review in the assessment roll of the city; and that the taxes thus assessed become a debt due the city at once from the person to whom they are assessed. (Sections 7.13, 7.80, and 7.81, Michigan Statutes Annotated, as amended.) The charter of the city of Detroit, (Compiled laws of the State of Michigan, 1929, chapter 49,) provides that a board of assessors shall assess all property liable to assessment, within the city and subject to taxation by the laws of the State. (Charter of the City of Detroit, title 4, chap. 7, secs. 1 and 7A, and title 6, chap. 2, sec. 1.) In addition, the municipal code of the city of Detroit provides that the taxable status of personal property shall be determined as of January 1 of each year, and that such taxes shall become a debt against the owner on January 1 each year, and that it is the duty of the city treasurer, to enforce the payment of such taxes by suit or otherwise. Municipal Code of the City of Detroit, chap. 81, sec. 1, and chap. 67, sec. 3.

It is provided in section 27.605, Michigan Statutes An-

notated, as amended, that a Michigan municipal corporation by its appropriate legal officers is empowered to bring suits in the courts of other States to collect taxes legally due to Michigan or its political subdivisions.

It is pursuant to these statutes that taxes were assessed against the personal property of defendants in the city of Detroit for the years 1954 and 1955, and it is pursuant to these statutes that the treasurer of the city of Detroit initiated this action in the circuit court of Cook County, Illinois.

It is a contention of the defendants in this cause that neither considerations of full faith and credit nor comity require or authorize the plaintiffs to bring this action in the courts of Illinois for the reason that the generally established rule that revenue laws of one State or country will not be enforced in the courts of another State or country precludes the action.

This time-worn and oft-repeated doctrine precluding the enforcement of revenue laws of sister States in the courts of another State first found expression in the ancient case of *Boucher* v. *Lawson,* 95 Eng. Rep. 53 (1734) wherein Lord Hardwicke refused to give effect to a Portuguese revenue law prohibiting the export of gold, interposed as a defense against delivery of a smuggled cargo of gold in England, for the stated reason that the gold was needed by England and to deny the delivery would have a detrimental effect upon English commerce. The principle was thereafter expanded and repeated both in dictum and as a rule of law governing actual determination in later English cases. (*Holman* v. *Johnson,* 98 Eng. Rep. 1120, (1775); *Planche* v. *Fletcher,* 99 Eng. Rep. 164, (1779); *James* v. *Catherwood,* 3 Dow. & Ry. 190 (1823); *Sharp* v. *Taylor,* 41 Eng. Rep. 1153 (1848).) None of these cases actually dealt with an attempt to collect a tax in the courts of a foreign State.

The doctrine was engrafted into the law of this country in the case of *Ludlow* v. *Van Rensselaer,* (1806) 1 Johns.,

N.Y. 94, where a defendant sought to avoid paying a promissory note executed in France upon the ground that the note contained no stamps as required by French law. The court, however, held the note valid, saying that the court did not sit to enforce the revenue laws of other countries. In *State of Maryland* v. *Turner*, (1911), 132 N.Y.S. 173, the first attempt was made by one State to sue for taxes in another and the doctrine was there applied to deny recovery holding that a foreign tax was a penal law. The principle thereafter found wide acceptance in the courts of this country, notable examples being in the cases of *State of Colorado* v. *Harbeck*, (1921) 232 N.Y. 71, and *City of Detroit* v. *Proctor*, (1948) 44 Dela. 193. A review of the many applications of this doctrine in this country and especially in the last cited *Proctor case* indicates that this doctrine has continued to enjoy wide popularity in this country.

However, in isolated instances decisions of courts in this nation began what might be termed a gradual chipping away of the effect and application of this age-worn doctrine. In the case of *Holshouser Co.* v. *Gold Hill Copper Co.* (1905) 138 N.C. 248, in a receivership proceeding for an insolvent New Jersey corporation in North Carolina, the State of New Jersey was permitted to prove its claim for franchise taxes from the insolvent corporation, accruing to the State of New Jersey under a statute providing that such tax should be a debt due from the corporation to the State. Subsequently it was established that where the tax liability had proceeded to judgment in the State wherein the tax was assessed, in a proceeding in which the court had properly acquired jurisdiction over the subject matter and the parties, such judgment for taxes was entitled to full faith and credit in the courts of another State or in the Federal courts sitting in such other State. *Milwaukee County* v. *White Company*, 296 U.S. 268.

The modern view, however, appears to be that one State of the union will enforce the revenue laws of a sister State.

This view is exactly contrary to the age-old doctrine above noted. It first found expression in the well-reasoned opinion of the St. Louis Court of Appeals in the State of Missouri. (*State ex rel. Oklahoma Tax Com. v. Rodgers,* (1946) 238 Mo. App. 1115.) That court found that revenue laws are not penal laws and the reasons for failure to enforce penal laws of one State in the courts of another have no valid application to preclude the enforcement of the revenue laws of a sister State. The court said a penal law is punitive in nature, while a revenue law defines the extent of the citizens' pecuniary obligation to the State, and provides a remedy for its collection. "In our opinion, the elimination of the foregoing considerations, which are said to prompt courts to refuse to enforce foreign penal laws, as reasons for excluding suits of this kind, leaves no valid justification for not permitting a suit in this state for a tax lawfully levied by another. The simplest ideas of comity would seem to compel such a result, and modern conditions demand it. The contrary doctrine was the product of the commercial world, and arose at a time when there was great commercial rivalry and international suspicion. It was applied as between wholly sovereign states. It has no place in a union of states such as the United States, where the interest of both the state and the taxpayer will be protected from arbitrary power by the provisions of the federal constitution. The taxpayer who enjoys the protection of government should bear his share of the expense of maintaining the government, and should not be permitted to escape his obligation by crossing state lines."

The new modern concept established in the *Rodgers case* has since found acceptance and voice in the courts of Arkansas and Kentucky. *State of Oklahoma v. Neely,* 225 Ark. 230 (1955); *State of Ohio v. Arnett,* 314 Ky. 403 (1950).

A later case from the Missouri Appellate Court, (*State of California v. St. Louis Union Trust Co.* (Mo. App.)

260 S.W.2d 821, refused to permit the State of California to bring suit for inheritance taxes due from the estate of one Mary Agnes Rogers, deceased, who died in California a resident of that State, to collect same from certain Missouri trustees of decedent's property located in the State of Missouri, when the assets of the estate within California proved inadequate to cover all of the taxes due. The Missouri court found that the right prosecuted by the State of California was bound up with a prescribed statutory remedy available only in California. "When a legislature so ties together a right and a remedy, it is impossible for courts of any other State to exercise jurisdiction." Thus while the Missouri court refused to hear the cause because of the exclusive California remedy, the court did say, "although some courts have recently made decisions not in harmony with *State ex rel. Oklahoma Tax Com.* v. *Rodgers, supra,* we remain of the opinion that it was soundly ruled. There should be no absolute bar to extraterritorial suits by States to collect any or every type of tax from former residents."

This court finds itself, upon complete review of the cases cited in support of the older and majority doctrine and upon analysis thereof, inclined to the view of the modern rule as set forth in the *Rodgers* and later cases as the better doctrine. This view likewise conforms to the well-reasoned principles in this field espoused in leading law journals in this country. 47 Mich. L. Rev. 796, 18 Cornell Law Quarterly 581.

The oft-mouthed principle that one State will not enforce the revenue laws of another State loses its force and semblance of validity when examined with a view to its merits. The doctrine originated purely in consideration of commercial convenience and, in consequence of blind application, acquired a status to which reasons were thereafter assigned. To refuse to give sanction to the revenue laws of the State of Michigan in an action in Illinois has no commercial effect, salutary or otherwise. A revenue law is

not penal and the reasons for failing to enforce the penal laws of a sister State have no real application when the cause is based upon the revenue laws of a sister State. These defendants enjoyed the protection afforded them by the laws of Michigan during the years 1954 and 1955. There is no valid reason why they should not contribute to the cost incurred in affording themselves and their property such protection. The Michigan statutes constitute the tax assessed as a debt owing from the defendants to the city of Detroit. This action then resolves itself into an action in the nature of debt for moneys due in the circuit court of Cook County. The remedy for the debt created by the tax assessed in the city of Detroit is not, by statutory provision or otherwise, created as an exclusive remedy in the courts of Michigan. Consequently, in our view of the doctrine here in issue, there remains no reason of comity upon which the courts of this State should deny this action, pursuant to the taxing statutes of Michigan, to the plaintiff herein.

This cause comes to this court upon a constitutional question: Must the courts of Illinois give full faith and credit to the taxing statutes of the State of Michigan? Having determined that upon principles of comity, the Illinois court should hear the plaintiffs' action, it becomes unnecessary for us to determine if the constitutional provision also requires the circuit court of Cook County to hear the cause. A constitutional question should not be decided if the cause can be determined on other grounds. *People ex rel. Downs* v. *Scully,* 408 Ill. 556; *Winston* v. *Zoning Board of Appeals,* 407 Ill. 588; *People* v. *Metcoff,* 392 Ill. 418; *People* v. *Chiafreddo,* 381 Ill. 214.

The order of the circuit court of Cook County is, therefore, reversed and the cause is remanded to that court with directions to proceed in conformity with this opinion.

*Reversed and remanded, with directions.*