**STATE (MINNESOTA), Plaintiff-Appellant, v. KARP, Defendant-Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 6972.   Decided October 11, 1948.

Peck, Shaffer & Williams, Cincinnati, for plaintiff-appellant.
Burns & Friedman, Cincinnati, for defendant-appellee.

## OPINION

By MATTHEWS, PJ.:

This is an appeal from a judgment for the defendant following the sustaining of a demurrer to the plaintiff's amended petition. The grounds of the demurrer were (1) that the court had no jurisdiction of the subject of the action; (2) that the plaintiff had no legal capacity to sue; (3) that there was a defect of parties plaintiff; and, (4) that the amended petition did not state facts constituting a cause of action. The order sustaining the demurrer does not disclose the respect in which the court found the amended petition to be defective.

The plaintiff seeks to recover a judgment for the amount of an income tax plus interest and penalty. In the amended petition, it is alleged that the defendant during the year 1940 received income in the amount of $15,761.01 from business transacted within the State of Minnesota, that under the law of that state then in force incomes from business transacted within that state by both residents and non-residents were taxable according to a schedule of rates set forth, that receivers of such incomes were required to file returns thereof, and upon failure so to do, the Commissoner of Taxation was required to prepare and file a return for the delinquent taxpayer, and that such return should be prima facie correct and valid and the taxpayer should have the burden of establishing its incorrectness or invalidity in any action in respect thereto. It was also alleged that in addition to all other methods authorized for the collection of the tax it could be collected in an ordinary action at law or in equity by the state against the taxpayer.

It is set forth that the defendant failed to make a return of this income for 1940, and that in 1944 the Commissioner of Taxation prepared and filed a return showing that the defendant's tax on said income was $973.49, that the penalty for the delinquency was $48.67, and the accrued interest was $224.84, making a total of $1247.00. The prayer was for judgment for $1022.16.

In its amended petition, the plaintiff expressly disavowed any claim that the defendant "is or was at any time a resident of the State of Minnesota" and there is no allegation that he was either actively or constructively within the borders of that state at any time in 1940 or thereafter.

The second and third grounds of demurrer raise the question of the right and capacity of the State of Minnesota .to maintain this action, and whether it has authorized its institution. In view of the express allegation in conformity to the law of that state that the state is authorized to maintain the action, that question seems to us foreclosed on a demurrer, and in view of the fact that the amended petition is verified by an assistant attorney general of that state and was filed by reputable members of the bar of Ohio, the intention to file it must be presumed. There is a presumption that a regularly admitted attorney has authority to represent the client for whom he appears. 5 Am. Jur., 307.

The amended petition shows that if a chose in action exists, it is owned by the plaintiff, and as owner it, of course, has a right to sue to enforce it in any state or federal court having jurisdiction of causes of action of that kind. It, therefore, is our conclusion that the second and third grounds of demurrer are not well founded.

The first ground of the demurrer raises the question of the jurisdiction of the court to entertain an action by a sister state to enforce against a defendant the amount of a tax levied by it.

Plaintiff's counsel concedes that it has been frequently stated in judicial opinions that courts of a state will not assist other states in enforcing their revenue laws and will not enter a judgment upon a tax claim that has not been previously reduced to judgment by the levying state. The law deduced from these judicial opinions is stated in 51 Am. Jur., 868, et seq., as follows:

"Taxes are imposts collected for the support of the government, and not debts in the ordinary sense of that term, and the principles which prevent one state or country from en-

forcing the penal laws of another state or country have generally been construed to apply to foreign revenue laws, and to preclude a state or its collecting officer from maintaining in the courts of another jurisdiction an action for the collection of taxes due to it. The rule has been stated to be that even if a tax upon a nonresident is held to be a personal liability, he cannot be sued upon it except in the courts of the state in which it was assessed. It has accordingly been held that an action to recover a tax imposed in one state will not be entertained by a Federal court sitting in another state. Likewise, upon the theory that the revenue laws of one state have no force in another, it has been held that no action can be maintained by one state or political or municipal subdivision thereof in the courts of another state for the recovery of taxes alleged to be due the former. A distinction, however, must be drawn between an action in the courts of another state or jurisdiction to enforce a tax liability and an action in such other courts upon a judgment recovered in the courts of the taxing state for taxes. A judgment of another state is not to be denied full faith and credit in state and Federal courts merely because it is a judgment for taxes. Moreover, it is to be noted that the Supreme Court now regards the question whether one state must enforce revenue laws of another state to be an open question. It is indicated that a suit to recover taxes due under the statutes of another state may be allowed as a matter of comity without regard to the compulsion of the full faith and credit clause."

And while conceding that in the Restatement of Conflict of Laws, it is stated that "no action can be maintained by a foreign state to enforce its license or revenue laws, or claims for taxes" (Sec. 610, and Comment) appellant's counsel contends that the rule never had a firm foundation, was based on obiter dicta rather than upon cases requiring for their decision the application of the rule.

It is undoubtedly true that the rule is not supported by many cases in which its application was the ratio decidendi. Whatever authority it has is based largely upon its wide currency for almost two centuries. A comprehensive review of the origin and history of the use of the putative rule is found in the case of State ex rel. v. Rodgers, —— Mo. App., ——, 193 S. W. (2d) 919, to which reference is made rather than prolonging this opinion by ourselves tracing its history. We do this more readily because we have concluded that the

decision of this case does not require us to decide whether the rule ever had any validity or that having had validity in its time and place, has lost its validity because inapplicable to present day conditions in the relation between the states.

In the recent case of Milwaukee County v. White Co., 296 U. S., 268, the court was called upon to decide whether a United States District Court, sitting in Illinois had jurisdiction of an action upon a judgment for taxes rendered by a court of the state of Wisconsin. The court pointed out the difference between an action upon a judgment for taxes and an action upon a claim for taxes, and then proceeded to decide that an action upon a judgment for taxes could be maintained in the United States courts sitting in a state other than the state levying the tax. The court pointed out that it was not a question of jurisdiction of the court, but rather a question as to the merits of the claim, saying at 272 that:

"The objection that the courts in one state will not entertain a suit to recover taxes due to another or upon a judgment for such taxes, is not rightly addressed to any want of judicial power in courts which are authorized to entertain civil suits at law. It goes not to the jurisdiction but to the merits, and raises a question which district courts are competent to decide. See Illinois Central R. Co. v. Adams, 180 U. S. 28; General Investment Co. v. New York Central R. Co., 271 U. S. 228, 230; Becker Steel Co. v. Cummings, ante, p. 74.

"That defense is without merit if full faith and credit must be given the judgment. But even if full faith and credit is not commanded there is nothing in the Constitution and laws of the United States which requires a court of a state to deny relief upon a judgment because it is for taxes. A state court, in conformity to state policy, may, by comity, give a remedy which the full faith and credit clause does not compel."

It is when we look to the merits of the alleged cause of action that we find the amended petition fatally defective.

It is fundamental that jurisdiction of all governments is geographical or territorial. Any attempt at extra-territorial jurisdiction constitutes an invasion of another sovereignty. Jurisdiction can only be exercised over either persons, activities, or property. The jurisdiction of a state, acting either through its executive, legislative, or judicial department, or by the combined action of one or more of such departments must confine itself to persons and property and activities within

its boundaries, and any attempt to control persons or things beyond such boundaries is ineffective and void for want of power and violates the due process clause of the XIVth Amendment to the Constitution of the United States. No state had any power to govern except within its own borders before the ratification of the Constitution of the United States, and that instrument did not extend the power of the states. On the contrary, it restricted their power.

In 14 Am. Jur., 418, et seq., it is said:

"It is a fundamental rule of international jurisprudence that every state or nation possesses an exclusive sovereignty and jurisdiction within its own territory. A consequence of this maxim is that no state can by its laws and no court, which is only a creature of the state, can by its judgments or decrees directly bind or affect property or persons beyond the limits of that state. In other words, a court created within and for a particular territory is bound in the exercise of its powers by the limits of such territory. No process of any state court has any effect or efficiency beyond the boundaries of the state under the law of which it was issued. Any attempt by one state to give to its courts jurisdiction beyond its own limits over persons domiciled or property situated in another state is a usurpation of authority, and all judicial proceedings in virtue thereof are held utterly void. A statute, however comprehensive, should not be construed as conferring such jurisdiction."

This limitation upon the power of a state is so fundamental that it would be difficult, if not impossible, to find a case, the decision of which turned upon a dispute on that broad principle, but the American Law Institute deemed it the part of wisdom and logic to state in Section I of its Restatement of Conflict of Laws that "No state can make a law which by its own force is operative in another state." That this limitation upon state power applies to its power to tax has been held in too many cases to justify the attempt to collate them. In Shaffer v. Carter, 252 U. S., 37 at 49, the Supreme Court of the United States said:

"Governmental jurisdiction in matters of taxation, as in the exercise of the judicial function, depends upon the power to enforce the mandate of the State by action taken within its borders, either in personam or in rem according to the circumstances of the case, as by arrest of the person, seizure

of goods or lands, garnishment of credits, sequestration of rents and profits, forfeiture of franchise, or the like; * * *"

Let us recur to the allegations of the amended petition to ascertain the basis for the exercise of its power to tax the income of the defendant and the extent of that power. We find that the only claim on that subject is that in 1940 the defendant received **income** "derived from business transacted within the State of Minnesota." It is not alleged that it was **net** income, although the statute quoted in the amended petition purports to impose a tax only on **net** income. It is not alleged that the net income received by defendant or any other property of the defendant was located in Minnesota at any time in 1940, or at any other time. Then when there is added to these omissions the failure to allege that defendant was ever physically in Minnesota, and the express allegation that at no time was he a resident of that state, what is shown upon which the power and authority of the state could operate? The defendant was not there and there was no property there at that time and neither was there in 1944, when the state sought to compel the payment.

The facts in Colorado v. Harbeck, 232 N. Y. 71, present a stronger case on the facts than this case. In that case, a resident of Colorado died testate while temporarily in New York. His will was admitted to probate in New York and his estate entirely administered there. After the executrix had accounted and the estate had been distributed in New York, the state of Colorado instituted proceedings in its courts to assess a transfer tax under its laws upon the estate and notice was given by mail to all defendants, as provided by law. The inheritance tax laws of Colorado provided that upon the death the tax should be due at once and remain a lien on the property transferred until paid. The Colorado statute provided that all legatees and executors should be liable for the tax. The tax was assessed as upon the estate of a resident of Colorado and notice of the assessment given to all defendants. The estate consisted of intangibles, none of which were physically in Colorado. Upon failure of the legatees and executrix to pay the tax, this action was instituted by the State of Colorado in the Supreme Court of New York.

The Court of Appeals stated in the sixth paragraph of the syllabus, that:

"Where letters testamentary were issued in this state upon the estate of a decedent and the estate was settled without

providing for the payment of a transfer tax in the state of Colorado, of which state decedent was a resident, an action cannot be maintained on its behalf in the courts of this state to recover the tax."

And, at page 83 of the opinion, the Court said;

"Although a liability to pay the tax exists under the Colorado statute, jurisdiction and power to enforce the liability in the New York tribunal must be established. Under the due process clause of the United States Constitution, where the delinquents are non-residents of the taxing state and outside its jurisdiction, so that no personal liability or enforcible duty may be established as against them and where the property involved is without the taxing state so that no res exists upon which the taxing state may impose a lien, the state is powerless to collect the tax in its own courts and powerless to invoke the aid of a sister state to collect its revenue. (Pennoyer v. Neff, 95 U. S. 714; Dewey v. Des Moines, 173 U. S. 193; City of New York v. McLean, 170 N. Y. 374, 387, 388; Matter of Maltbie v. Lobsitz Mills Co., 223 N. Y. 227.)"

In the Harbeck case, the testator was a resident of Colorado at the time of his death and as his entire estate consisted of intangibles, the entire estate had its situs in Colorado if the maxim mobilia sequuntur personam was applicable. In the Colorado action to assess the tax all the forms of judicial procedure were complied with including actual notice by mail, but no actual service was made upon defendants and no appearance entered by them and no property sequestered. On these facts the Court of Appeals held that the decree of the Colorado Court assessing the tax imposed no personal liability and no cause of action was stated in the petition on such decree filed in the New York Court.

It seems to us that the amended petition in the case at bar discloses even more clearly that Minnesota had nothing within its borders upon which to exercise its power. The defendant at no time was a resident of the State. It is not alleged that he was ever in the state. No property was sequestered. The only suggested basis for the exercise of its sovereignty is that in 1940 he had received income from business transacted in Minnesota. Where or in what manner he received it is not shown. In this situation in 1944, the Commissioner of Taxation, an administrative officer, without personal service, assessed this tax which under the law was

made prima facie evidence against the defendant. That, it seems to us, was an attempt by Minnesota to extend its sovereignty beyond its boundaries and control and bind the defendant. No such power resides in any state and an attempt to so extend its power is void and violates the XIVth Amendment to the Constitution of the United States. To give effect to such an attempt would deprive the defendant of property without due process of law.

We are of the opinion that the amended petition fails to show a cause of action enforceable in Ohio.

For these reasons, the judgment of the Court of Common Pleas is affirmed.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion & judgment.