THE STATE OF OHIO, APPELLEE, *v.* CARDER, APPELLANT.

2

(No. 39902—Decided December 28, 1966.)

*Mr. E. Raymond Morehart*, prosecuting attorney, for appellee.

*Mr. Richard C. Gerken* and *Mr. Forrest P. Moore*, for appellant.

MATTHIAS, J.   This case was argued before this court last spring. However, since a question was raised as to the applicability of the doctrine of *Escobedo* v. *Illinois* (378 U. S. 478, 12

L. Ed. 2d 977, 84 S. Ct. 1758) to this case, the court decided to delay its decision until the determinations by the Supreme Court of the United States of the cases of *Miranda* v. *Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, and *Johnson* v. *New Jersey*, 16 L. Ed. 2d 882. The case was reassigned for further argument this fall in the light of the *Miranda* and *Johnson* decisions.

Defendant's primary contention relates to the admissibility of his confession. It is his contention that the confession was barred from admission into evidence under the doctrines enunciated in *Escobedo* v. *Illinois*, 378 U. S. 478.

This case was tried during that gray area between *Escobedo* and *Miranda* v. *Arizona*. Although the actual ruling in *Escobedo* was specific, the ruling and the broad implications created by it and the opinion in support thereof left law-enforcement officials and the judiciary hanging on a limb. *Escobedo* created a labyrinth in which the law-enforcement authorities were required to grope, seeking without direction the rules of conduct which would be held to accord an accused his constitutional rights in relation to in-custody interrogation. It was not until *Miranda* v. *Arizona*, some two years later, that the paths were marked. This was the very purpose of *Miranda*, as was stated, as follows, in the opinion:

"This case (*Escobedo* v. *Illinois*) has been the subject of judicial interpretation and spirited legal debate since it was decided two years ago. Both state and federal courts, in assessing its implications, have arrived at varying conclusions. A wealth of scholarly material has been written tracing its ramifications and underpinnings. Police and prosecutor have speculated on its range and desirability. We granted certiorari in these cases, 382 U. S. 924, 925, 937, in order further to explore some facets of the problems, thus exposed, of applying the privilege against self-incrimination to in-custody interrogation, and to give concrete constitutional guidelines for law enforcement agencies and courts to follow."

The burden of *Escobedo*, not only on law-enforcement authorities but also upon reviewing courts, was recognized in *Johnson* v. *New Jersey*, 16 L. Ed. 2d 882.

The specific holding in *Johnson* recognized the dilemma when it held that the decision in *Escobedo* v. *Illinois* is applic-

able only to trials begun after the date of that decision, to wit, June 22, 1964, and that the decision in *Miranda* v. *Arizona* applied only to trials begun after the date of that decision, to wit, June 13, 1966.

In determining that those cases were neither retroactive nor even applicable to cases pending on direct appeal, the court said:

"All of the reasons set forth above for making *Escobedo* and *Miranda* nonretroactive suggest that these decisions should apply only to trials begun after the decisions were announced. *Future defendants will benefit fully from our new standards governing in-custody interrogation, while past defendants may still avail themselves of the voluntariness test.* Law enforcement officers and trial courts will have *fair notice* that statements taken in violation of these standards may not be used against an accused. Prospective application only to trials begun after the standards were announced is particularly appropriate here. Authorities attempting to protect the privilege have not been apprised heretofore of the specific safeguards which are now obligatory. Consequently they have adopted devices which, although below the constitutional minimum, were not intentional evasions of the requirements of the privilege. In these circumstances, to upset all of the convictions still pending on direct appeal which were obtained in trials preceding *Escobedo* and *Miranda* would impose an unjustifiable burden on the administration of justice.
"* * *

"As for the standards laid down one week ago in *Miranda,* if we were persuaded that they had been fully anticipated by the holding in *Escobedo,* we would measure their prospectivity from the same date. Defendants still to be tried at that time would be entitled to strict observance of constitutional doctrines already clearly foreshadowed. The disagreements among other courts concerning the implications of *Escobedo,* however, have impelled us to lay down additional guidelines for situations not presented by that case. This we have done in *Miranda,* and these guidelines are therefore available only to persons whose trials had not begun as of June 13, 1966. See *Tehan* v. *Shott,* 382 U. S., at 409 * * *.''

The court in the *Johnson case* also pinpointed the actual rules laid down in *Escobedo*, when it said:

"Apart from its broad implications, the precise holding of *Escobedo* was that statements elicited by the police during an interrogation may not be used against the accused at a criminal trial, '[where] the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent * * *.' 378 U. S., at 490-491."

Two significant elements of the *Escobedo* rule are: One, that the person being interrogated must request and be denied the right to consult with counsel, and, two, that the interrogators must have failed to effectively warn him of his absolute constitutional right to remain silent.

An examination of the facts in the instant case makes it readily apparent that the confession is not barred by the *Escobedo* rule. Neither of those elements is present in this case.

It is not contended that defendant at any time requested to consult with counsel. Thus, obviously, if there was no request for counsel there could be no denial thereof.

Defendant was not held incommunicado after he was taken to the sheriff's office that night. His father accompanied him there and was permitted to talk to him. It is not even urged that defendant was questioned at that time. There is nothing in the record to show that anyone even talked to defendant at this time. The next morning a number of outside people visited defendant before his interrogation began. His father, his employer and an attorney were all permitted to see defendant prior to his questioning. The fact that the attorney refused to represent defendant is of no particular moment. The important fact is that defendant was not denied access to an attorney. Although the evidence shows that defendant's parents and another attorney appeared at the sheriff's office shortly after the questioning began, there is evidence in the record

which indicates that at some time during the questioning defendant was informed of this fact and said that he did not wish to see them.

The record on the motion to suppress where the admissibility of the confession was originally attacked shows the following testimony:

"A. Because, during the questioning, we asked him if he wanted to talk to his mother and father or his attorney and he said, no, that he didn't. He didn't want to see them.

"He asked: Did he have to see them, and we told him: No, he didn't have to see them, and he asked then: Did he have to go home, and we said: *No, he did not have to, and we continued questioning him,* and then, later, I asked him again: 'Do you want to see them? They are out there waiting, and they want to see you, and Mr. Jackson wants to see you.' [Emphasis added.]

"And he said at that time: 'Well, I can't tell them. Will you tell them easy for me?'"

The determinative factor in these cases is the *desire of the accused to consult with counsel, not the desire of counsel to consult with the accused.* Where, as here, the accused did not wish to see the attorney the mere fact that the attorney wished to see the defendant creates no denial of constitutional right.

The record shows also that several times during the interrogation defendant was told that he did not have to talk to his interrogators. It is not necessary that the informing of the person being questioned assume any particular form. So long as the person is made cognizant of his right to remain silent the constitutional mandate is fulfilled.

Thus, the confession in the instant case does not fall within the doctrines enunciated in *Escobedo.*

The basic question then becomes whether the confession itself was involuntary. It should be pointed out at this point that the voluntariness of this confession was thoroughly explored both by the trial court and the Court of Appeals. Prior to the actual trial of this cause a separate and extensive hearing before the court was held on a motion to suppress. It was at this hearing that all the evidence which would affect the admissibility of the confession should have been introduced.

At the conclusion thereof the trial judge made the following specific finding:

"The confession or statement was made voluntarily by the defendant after he talked to his father, his employer, a lawyer sent to the jail by his father, and a juvenile officer from the Juvenile Court."

During the trial the same issue was later submitted to the jury under the following instructions by that court:

"Evidence has been offered on the part of the state, in the form of alleged confessions, statements or admissions by the defendant.

"Your first duty in this respect will be to determine whether or not the defendant made such statements and declarations, or any part thereof. If so, you are then to determine as a question of fact, whether or not any of these confessions or admissions, or all of them, were voluntary or involuntary. Confessions, admissions and statements made by a defendant cannot be considered unless voluntarily made.

"This means that the confessions, admissions or statements must not be obtained by any sort of threat or violence, or fear or injury emanating from an officer nor may they be induced by hope excited in the mind by representations or promises of immunity or hope of advantage, nor while the person was not in a rational mental condition. When it appears that such confessions, admissions or statements were procured or made under such conditions, they are held to be involuntary and cannot be considered by the jury for any purpose whatsoever.

"Qualified by these cautions in receiving and considering such evidence, you must determine whether or not the confessions, admissions or statements made by the defendant were voluntary or involuntary.

"If you find them to be involuntary, you must entirely disregard the same and not give them any weight or consideration whatever.

"But if you find them to have been voluntarily made, then they may be considered as competent evidence."

The jury also determined the confession to be voluntary. The cause was reviewed by the Court of Appeals, which court found:

"There is an entire absence of any force, coercion or compulsion, physical or mental. We find nothing to make the confession or his waiver of parental or counsel presence anything other than completely voluntary."

We are here asked to review this question for a fourth time.

The facts do not support defendant's argument that such confession was involuntary. There is nothing which would indicate that defendant's will was so overcome that his statement was not a product of a rational intellect and a free will.

Defendant was questioned in the morning after he had received breakfast and talked to his father, his employer and an attorney. There is no suggestion that the defendant was beaten, threatened or coerced in any manner, either physically or psychologically, during his interrogation. The questioning was not unduly prolonged, covering a period from 9 a. m. until about 12:15 p. m. It should be noted that his employer and a probation officer of the Juvenile Court were present during such questioning.

In *Gallegos* v. *Colorado*, 370 U. S. 49, 55, it is said that it is the "totality of the circumstances" which determines the admissibility of a confession.

Defendant's age has been made an issue in this case. Paragraph one of the syllabus in *State* v. *Stewart*, 176 Ohio St. 156, reads as follows:

"A person who is less than 18 years old is not legally incapable of making a voluntary confession."

In the course of the opinion, the court stated:

"Mr. Justice Douglas, writing for the majority in the *Gallegos case* [370 U. S. 49] stated:

" 'There is no guide to the decision in cases such as this, except the totality of circumstances * * *.'

"There is nothing in the 'totality of circumstances' involved here, which made the confession anything but voluntary. To find that it was inadmissible, we would have to hold that any confession made by a person who is not yet 18 years old is involuntary unless one of his parents or his attorney is present. This is not the law. We, therefore, find that the trial court did not err in admitting the confession into evidence."

Thus, the fact that defendant was under 18 does not render him incapable of making a voluntary confession.

When the circumstances are examined under which this confession was obtained, there is no reason for denying its admission into evidence.

We turn next to an examination of defendant's contention that the authorities had no right to interrogate him until after he was taken before the Juvenile Court. Reliance is placed on Section 2151.25, Revised Code, for this argument. This section reads in part as follows:

*"When a child is arrested under any charge, complaint, affidavit, or indictment,* whether for a felony or a misdemeanor, such child shall be taken directly before the Juvenile Court. * * *"* (Emphasis added.)

It is obvious that the provisions of this section contemplate only a situation where a juvenile is actually charged with a crime. It does not apply nor would it be practicable to apply it to every juvenile picked up for interrogation by the authorities. In this case, defendant was picked up in the first instance for questioning in relation to the murder of the deceased; he was not then charged with any offense, and, absent a charge, Section 2151.25, Revised Code, is not applicable.

Numerous other errors are urged by defendant.

He contends that the evidence obtained at the home of his parents was the result of an illegal search and seizure. It is his position that a parent cannot waive a child's constitutional right of protection against illegal search and seizure. Defendant's argument is not well taken.

The general rule is that a parent who owns or controls the premises in which a child resides has the right to consent to a search thereof even though such search may produce incriminating evidence against the child. See *Maxwell* v. *Stephens*, 229 F. Supp. 205; *Maxwell* v. *State*, 236 Ark. 694, 370 S. W. 2d 113; *McCray* v. *State*, 236 Md. 9, 202 A. 2d 320; and *State* v. *Kinderman*, 271 Minn. 405, 136 N. W. 2d 577; annotation, 31 A. L. R. 2d 1081.

Next, defendant contends that the court erred in admitting into evidence the card containing his fingerprints and picture. This argument is based on the provisions of Section 2151.31, Revised Code, which provides that if a child is fingerprinted or

photographed it shall be done on a civilian card, not a criminal card, and shall be kept in the civilian file.

The nature of the card upon which the fingerprints or photograph is placed has nothing to do with their authenticity. The purpose of this section is not to determine their admissibility into evidence but rather to conform to the theory that juvenile proceedings are not criminal in nature.

However, even if error existed in this regard, defendant did not question the admissibility of the fingerprints and photograph on this ground in the trial court, and, therefore, he cannot raise it on appeal.

Two of defendant's questions of law relate to the question of age of the defendant.

The prosecuting attorney on the voir dire questioned the jurors as to whether defendant's age would influence their decision. Those who said it would were excused. In determining guilt or innocence, defendant's age is not a factor. He committed a crime of an adult and was tried as an adult. It was proper to question the jury as to whether his age would influence its decision and to excuse any juror who said that it would.

Defendant contends also that the court should have included in its charge in relation to the voluntariness of the confession an instruction that the defendant's age should be taken into consideration. The court's charge was correct, defendant took no exception thereto and did not request that such matter be added. He cannot now claim that such omission constituted error.

The defendant urges further that the court erred in charging on a robbery, when there was no evidence that a robbery had been committed.

There is substantial evidence in the record of a robbery.

To summarize the disposition of the basic issues raised by this case:

The Supreme Court of the United States in *Johnson* v. *New Jersey* (384 U. S. 719) held that the doctrines announced in *Escobedo* v. *Illinois* (378 U. S. 478) and *Miranda* v. *Arizona* (384 U. S. 486) are applicable only to trials commenced after the respective dates of those cases, to wit, June 22, 1964,

for *Escobedo*, and June 13, 1966, for *Miranda*. The Supreme Court in *Johnson* held that the law-enforcement authorities are entitled to fair notice of a substantial change in the rules in relation to the proper procedure in relation to in-custody interrogation. In relation to this the court said:

"* * * *Future defendants will benefit fully from our new standards governing in-custody interrogation, while past defendants may still avail themselves of the voluntariness test. Law enforcement officers and trial courts will have fair notice that statements taken in violation of these standards may not be used against an accused.* * * *"

Thus, a case tried after *Escobedo* but prior to *Miranda* is subject only to the specific rules announced in *Escobedo*.

*Escobedo* bars a confession taken in the absence of counsel only if counsel has been requested and denied or if the authorities have failed to inform the accused of his right to remain silent.

Thus, in a case tried after *Escobedo* but prior to *Miranda*, where there was no request for counsel and the accused was advised of his right to remain silent, a statement taken in the absence of counsel but otherwise voluntary in nature is admissible into evidence.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

TAFT, C. J., ZIMMERMAN, HERBERT, SCHNEIDER and BROWN, JJ., concur.

O'NEILL, J., concurring. I concur in paragraph one of the syllabus and in the judgment.