John L. CARDER, a Minor, by Martha Carder, his Mother and Next Friend, Petitioner,

v.

E. L. MAXWELL, Warden, Respondent.

Civ. A. 67–16.

United States District Court
S. D. Ohio, E. D.

April 7, 1969.

Richard C. Gerken and Forrest P. Moore, Logan, Ohio, for petitioner.

William B. Saxbe, Atty. Gen., State of Ohio, and Stephen M. Miller, Asst. Atty. Gen., for respondent.

## OPINION AND ORDER

KINNEARY, District Judge.

Petitioner, a state prisoner, has brought this action for a writ of habeas corpus under Title 28, United States Code, Section 2241. An evidentiary hearing was held under the doctrine of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) because there were material facts which were not adequately developed in the state court proceedings.

Petitioner is presently serving two life sentences for, (1) first degree murder with premeditation, and, (2) first degree murder while in the perpetration of a robbery. These sentences were imposed by the Common Pleas Court of Fairfield County, Ohio, on September 17, 1964. Petitioner appealed these convictions to the Court of Appeals for Fairfield County, Ohio, which court affirmed the judgment of the Common Pleas Court. Upon appeal to the Supreme Court of Ohio, the judgments of conviction were affirmed. State v. Carder, 9 Ohio St.2d 1, 222 N.E.2d 620 (1966). The exhaustion doctrine of 28 U.S.C.A. § 2254 thus is satisfied by a decision on the merits by the highest court of this state.

The issues presented to this Court for decision are as follows:

1. The convictions and sentences under which petitioner is being detained, were imposed in violation of the DUE PROCESS CLAUSE

of the Fourteenth Amendment to the United States Constitution, in that petitioner was deprived of his right to counsel during in-custody interrogation.

2. The convictions and sentences under which petitioner is being detained were imposed in violation of the DUE PROCESS CLAUSE of the Fourteenth Amendment to the United States Constitution in that petitioner was compelled to be a witness against himself by the admission into evidence at his trial of involuntary statements made by him while in custody.

3. The convictions and sentences under which petitioner is being detained were imposed in violation of the DUE PROCESS CLAUSE of the Fourteenth Amendment to the United States Constitution in that the fruits of an unlawful search and seizure were introduced into evidence by the state at petitioner's trial and over his objection.

As specifically permitted by Rule 52 (a) of the Federal Rules of Civil Procedure, all findings of fact and conclusions of law of this Court appear in the body of this opinion and are not separately stated.

I

Petitioner's first contention relates to a violation of due process of law of the Fourteenth Amendment in that he was deprived of his right to counsel during in-custody interrogation. Specifically, this violation allegedly occurred during two separate periods of interrogation, (1) beginning at approximately 9:00 A. M. on the morning of April 7, 1964, and continuing for the better part of that morning, the petitioner was questioned by various state and local law enforcement officials concerning his involvement in the homicide of Vanetta Brucker, and, (2) on April 9, 1964, while in state custody and while being transported to the Juvenile Diagnostic Center in Columbus, the petitioner was ques-

tioned by the transporting officers concerning this same homicide. It is conceded that at neither of these periods of interrogation was a lawyer actually present with the petitioner.

The first point of inquiry concerning this contention will be directed at a determination of the legal standard to be applied to the facts in this case. Petitioner's trial commenced on August 31, 1964, a date which occurs during the hiatus period between two celebrated Supreme Court cases. On June 22, 1964, the Supreme Court of the United States announced its decision in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), which decision revised to a degree the legal rules relating to the availability of legal counsel to an accused and also the admissability of incriminating statements taken from an accused without the benefit of legal counsel or valid waiver thereof. Then, on June 13, 1966, the Supreme Court of the United States announced its decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), which elaborated on the legal principles announced in *Escobedo* with respect to the Fifth Amendment privilege against self-incrimination and which to a certain extent altered and extended those principles.

■ Thus, by the terms of Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) which declared that neither *Escobedo* nor *Miranda* were to be applied retroactively, the legal standards as announced in *Escobedo* only are applicable to this case. See State of Texas v. Payton, 390 F.2d 261 (5th Cir. 1968).

■ Initially, with respect to the petitioner's allegation of deprivation of the right to counsel during in-custody interrogation, the Court notes that at no place in the record does it appear that the petitioner was refused a request to consult with his lawyer. On the contrary, on more than one occasion the petitioner was asked whether he wished to see his parents or his attorney and he specifical-

ly indicated that he did not. This Court cannot accept the proposition of the petitioner that the desire of counsel to see the petitioner, in spite of petitioner's continued refusal to see anyone, is a situation to which the *Escobedo* standards were meant to apply. The *Escobedo* case does not require local law enforcement officials to allow a lawyer to see a person in custody where that person has expressly declared that he does not want to see a lawyer. The Court also finds no merit in the argument that petitioner, because of his age, could not refuse the services of an attorney employed by his parents.

■ Further, with regard to the second conversation on April 9, 1964, alleged by the petitioner to have violated his constitutional right to counsel during in-custody interrogation, the Court finds that the petitioner's constitutional rights were not violated by the conversation of the juvenile officer, the police officer, and the petitioner on the trip to the Juvenile Diagnostic Center. There is no evidence in the record to indicate that this conversation was anything other than a product of a completely voluntary decision on the part of the petitioner to talk about the crime. This Court cannot speculate as to the reasons why, after being admonished by at least two lawyers not to say anything, Carder insisted on discussing his involvement in the Brucker murder. Whether the motive was remorse, self guilt, or shame, it cannot be said that the petitioner's constitutional rights were violated because he chose to talk freely about the matter to the state officials.

## II

The petitioner's second contention relates to the voluntariness of the various statements he made to the police.

■ In the first instance, petitioner attempts to allege a violation of the *Escobedo* standards by focusing attention on the fact that the petitioner was allegedly never warned of his absolute right to remain silent. Failure to warn a defendant of his absolute constitutional right to remain silent, regardless of other circumstances, does not, by *Escobedo* rules, vitiate an otherwise voluntary confession. State of Texas v. Payton, 390 F.2d 261, 264, 265 (5th Cir. 1968).

■ The record is clear that prior to any in-custody interrogation the petitioner was visited both by his father and by an attorney. This attorney, who, because of a probable conflict of interest, could not represent the petitioner, specifically advised him not to talk to anyone about the matter [the murder of Brucker]. It is also established that at the very beginning of the questioning period, the petitioner was advised that if he was implicated in any way in the murder he did not have to say anything. Further admonitions were given during the course of the interrogation concerning the petitioner's right to remain silent, but nonetheless the petitioner continued to talk. While, upon reflection, the petitioner may now feel he should not have made the statements he did, this Court has no reason to believe that the statements were, in any legal sense, involuntary.

■ The Court agrees with the petitioner in his statement that the "totality of the circumstances" must determine whether or not these statements were voluntarily given. Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962); Johnson v. State of New Jersey, 384 U.S. 719, 729, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). The petitioner then cites sixteen separate circumstances which combine to allegedly make the "totality of the circumstances" indicate that the statements were not voluntary.

■ With regard to these enumerated circumstances, the Court finds that, (1) there is no evidence in the record before this Court that, irrespective of what the jail register indicated, John Carder did not in fact know the nature of the investigation being made by the police, (2) the petitioner was effectively warned of his constitutional right to remain silent on more than one occasion,

(3) because the petitioner unequivocally refused to see an attorney, the *Escobedo* case is inapplicable, (4) the delay in presentment before the juvenile court was not excessive, (5) in the resolution of conflicting testimony, the petitioner was not physically deficient at the time the confession was given, such that this deficiency would impair the voluntariness of the statements, (6) the petitioner's age, while possibly a factor to be considered in judging the voluntariness of the confession, does not by itself preclude a completely voluntary admission of guilt on the part of the petitioner, (7) the petitioner's mentality has not been proved to be anything other than normal, (8) in view of the petitioner's previous exposure to police work and acquaintance with members of the police department, the lack of previous criminal experience loses its ordinary import, (9) no food was ever withheld from the petitioner, (10) the number of interrogators present while the questioning was taking place is a fact which, absent other extreme circumstances, is not a legal basis for a determination that a confession was given involuntarily, see Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959) and Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960), (11) the period during which the petitioner was questioned was three and one-half hours at most, a period which falls far short of most cases in which the length of interrogation was considered significant in determining the voluntariness of the confession, see Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963) and Fikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957), (12) the "relay of officers" alleged to have taken part in this interrogation was not even remotely similar to cases in which this fact was considered as relevant to the determination of voluntariness, (13) the allegation regarding deception practiced by Mr. Byrd, petitioner's employer, is unsupported by the evidence, (14) the petitioner's confession was not elicited by any "psychological pressures" caused by the actions of the interrogating officials, (15) the discussion engaged in by the petitioner on his trip to the Juvenile Diagnostic Center in Columbus, Ohio is only further evidence of petitioner's complete willingness to talk about the murder in spite of all admonitions to the contrary. This Court finds that the "totality of the circumstances" does not indicate that the confession was involuntary in any legal sense of the term. This Court further finds that the procedures used by the police officials in eliciting this confession from the petitioner were constitutionally permissable and that the admission of these completely voluntary statements against him at trial did not violate any of the petitioner's constitutional rights.

## III

The final matter which the petitioner claims constituted a violation of his constitutional rights concerns the introduction at his trial of illegally seized evidence. Specifically, the petitioner alleges that the white motorcycle helmet taken from his home on the night of the murder was taken without his consent.

 The contention is belied by the testimony adduced at the evidentiary hearing held in this Court. That testimony reveals, and the Court finds, that both the petitioner and his father were asked whether it was permissible to take the white helmet, and there is no evidence to controvert the fact that permission was given. Consent to the seizure vitiates any subsequent objection to the use of the seized items on the basis of the illegality of the seizure. Frye v. United States, 315 F.2d 491 (9th Cir. 1963), cert. den. 375 U.S. 849, 84 S.Ct. 104, 11 L.Ed.2d 76 (1963).

Whereupon, the Court determines that the petition for writ of habeas corpus is without merit and therefore the writ is denied.

This action is hereby dismissed.