**UNITED STATES**

v.

**Private E–1 Shawn TURNER, 925–00–4704, US Army, Troop G, 2d Squadron, 3d Armored Cavalry Regiment, Fort Bliss, Texas 79916.**

**SPCM 12242.**

U. S. Army Court of Military Review.

22 April 1977.

CPT Jay Sacks Cohen, JAGC, CPT Buren R. Shields, III, JAGC, LTC John R. Thornock, JAGC, COL Alton H. Harvey, JAGC, Appellate Counsel for the Accused.

CPT Denis L. Durkin, JAGC, CPT John F. DePue, JAGC, COL Thomas H. Davis, JAGC, Appellate Counsel for the United States.

Before CLAUSE, DONAHUE and COSTELLO, Appellate Military Judges.

OPINION OF THE COURT

PER CURIAM:

Appellant alleges a violation of the rule of *United States v. McOmber,* 24 U.S.C.M.A. 207, 51 C.M.R. 452, 1 M.J. 380 (1976). In the Court's own language, the rule was announced that " . . . once an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel reasonable opportunity to be

---

present renders any statement obtained involuntary under Article 31(d) of the Uniform Code." 24 U.S.C.M.A. at 209, 51 C.M.R. at 454, 1 M.J. at 383. Also at issue is the prospectivity of *McOmber* and the problem of carry-over taint to unrelated charges. *See United States v. Lowry*, 25 U.S.C.M.A. 85, 54 C.M.R. 85, 2 M.J. 55 (1976). Because of our disposition of the primary issue, we need not discuss those latter questions.

The facts at issue are not in dispute as they were adduced at trial solely through the testimony of the CID agent and the questions by the civilian defense counsel. The Government sought to introduce appellant's statements after establishing through the agent's testimony that appellant had received proper warnings under Article 31, UCMJ, 10 U.S.C. § 831, and executed a knowing and intelligent waiver. Upon cross-examination, the following circumstances surrounding the statements were elicited. Appellant was released to the military by civilian authorities in a neighboring state after they had determined that his detention was unwarranted in matters unrelated to the present offenses. After he arrived at the CID office, appellant was placed in a room for interrogation. Outside the room, unknown to appellant, a civilian attorney who later represented him at trial was waiting. That attorney had inquired about appellant and was informed that he was in the next room. He then indicated[1] that he represented appellant on some other matters and considered himself counsel for appellant generally and requested to speak with him; the request was denied. During the ensuing interrogation, appellant provided information that led ultimately to his confession. After cross-examination, counsel objected to the admission of the statement and continued his objections to subsequent evidence "tainted" by the statement. The objection was that " . . . the right to counsel was not sufficiently ex-

plained to Mr. Turner; the fact that I, personally, was right outside the door available immediately to act as counsel for him [sic]. And I feel that it is certainly arguable that had Mr. Turner been advised of the fact, he would have asked for me to be present, and had that been the case I would have advised him not to make any confession to anything at all."

We find no violation of *McOmber's* rule as we do not see that the lawyer-client relationship between appellant and counsel had at that time been established for the military criminal investigation at issue. The thrust of *McOmber* is to prevent surreptitious interrogations by the military in which an accused is persuaded to waive the presence of his counsel.

The Court of Military Appeals' concern was over an attorney once appointed or retained. *McOmber* and its predecessor cases *United States v. Johnson*, 20 U.S.C. M.A. 320, 43 C.M.R. 160 (1971); *United States v. Flack*, 20 U.S.C.M.A. 201, 43 C.M.R. 41 (1970); and *United States v. Estep*, 19 U.S.C.M.A. 201, 41 C.M.R. 201 (1970) involved interrogations when there was a counsel and in all but the last, the right was invoked and ignored by the agents. In *Estep*, the rights were waived; interestingly enough the Court expressed doubt as to the existence of a lawyer-client relationship where counsel had been appointed for a limited purpose in the same matter. Resolution of the issue by assuming the relationship avoided reaching that question.

Here, we have no evidence of record that appellant believed himself to be represented by counsel. At best, we have only the preceding colloquy during cross-examination in which it was established that counsel indicated to the agent he represented appellant. We do not have the truth of the matter so stated,[2] only the fact that it was said. Evidence of the existence of the relationship is the particular province of coun-

---

1. This is related through narrative questions by counsel and affirmative responses by the agent.

2. The exchange would have been sufficient to establish notice of the lawyer-client relation-

ship to the agent; it goes without saying, however, that there can be no notice where there is no relationship.

sel and appellant; neither testified. We, therefore, do not believe that it was established that the relationship existed. We find as a matter of fact that counsel was not at the CID office representing appellant in the matters under investigation. Hence, the *McOmber* rule should not be invoked.

In addition to consideration of appellant's misplaced reliance on *McOmber* we have also considered the position set forth in the dissent. Basically, the dissent proceeds from a finding of an attorney-client relationship which relationship gave the attorney the right to assert the appellant's Fifth and Sixth Amendment rights to counsel. As asserted above, we do not consider that the record supports the finding of such a relationship at that time with respect to the offense then under investigation. Without such a relationship, no right of assertion of counsel rights rest in an attorney absent a request by an accused. The cases are now legion where such rights are asserted by an accused or suspect.

The next question posed, although not answered, by the dissent is whether the appellant could make a knowing and intelligent waiver of his right to counsel unaware that a lawyer was in the next room asking to see him. The rights warning given the appellant was adequate in every respect and there is no complained of deficiency. There is no evidence of pressure, trickery or fraud in the obtaining of the waiver. The question then is whether the suspect is entitled to know the physical whereabouts of an attorney at the time he is given the warning or how long it may take to get an attorney to the interrogation if he so desires. We think not, and do not believe such knowledge is essential to the issue of voluntariness. What then if an attorney already retained by the suspect for another matter is fortuitously present at the same place when the warning is given? While the practical answer may be to tell him of the situation and let him decide whether or not to see the attorney and retain him for this matter also, this is not a basis upon which we may decide this case. However, it must be recognized that this practical

solution cannot be overlooked without risk. We are satisfied from the facts of the instant case that there was no wrongdoing on the part of the Government with respect to obtaining the statement and that all of appellant's legal rights were accorded him.

Accordingly, the findings of guilty and the sentence are affirmed.

COSTELLO, Judge, concurring in part and dissenting in part.

The facts available persuade me that attorney Lovelace asserted a status as appellant's lawyer. Acting from that status he asserted appellant's right to consult with counsel which was improperly denied by the police. His subsequent in-custody waiver was of no effect. Accordingly, I would dismiss the charge tainted by that error and sustain the other.

Appellant asserts that his pretrial statements and certain other evidence were improperly admitted at trial because he was denied access to counsel at the initial police interrogation, citing *United States v. McOmber*, 24 U.S.C.M.A. 207, 51 C.M.R. 452, 1 M.J. 380 (1976). The *McOmber* rule requires that " . . . once an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel reasonable opportunity to be present renders any statement obtained involuntary under Article 31(d) of the Uniform Code." 1 M.J. at 383. With this and other language the Court specifically refrained from reaching any Constitutional issues. The "statutory" right protected by *McOmber* is clearly the right to free military counsel appointed under Article 27, U.C.M.J. *United States v. Lowry*, 25 U.S.C.M.A. 85, 54 C.M.R. 85, 2 M.J. 55 (1976).

The facts of record do not bring this case directly within the *McOmber/Lowry* rule. In both of those cases the accused requested and received military counsel at his initial interrogation. That counsel was ignored by all parties at the second interrogation in each case when related but separate of-

fenses were the subject. In this case a civilian attorney was on post and seeking appellant. Appellant was being delivered to the CID office from the custody of civilian authorities for questioning about the on-post offenses for which he was ultimately convicted. Appellant and the civilian counsel apparently reached the station house about the same time, but counsel's demand to see appellant immediately was denied by the agent-investigator on orders from his superiors.

At trial the agent testified that counsel's demand included statements that he was ". . . appellant's counsel 'on some other matters' and considered himself 'counsel for him generally.'" Nonetheless, appellant was kept unaware of and separate from that counsel, and interrogated by the agent. He made incriminating statements after an otherwise unexceptionable interrogation.

The absence of any immediate threat to appellant's statutory rights to appointed counsel and of any request by him for counsel remove this case from the *McOmber/Lowry* area. However, the fact of civilian counsel's efforts to see appellant raises two Constitutional questions: Was appellant denied a right to counsel? Even if not, was he able to make a knowing, intelligent waiver of his right to counsel unaware that a lawyer was in the next room asking to see him? The answer to the first question is "yes," and the mere statement of the second may be its own answer.[1]

In order for appellant here to have been denied a right to retained counsel he must have had counsel at the time the police refusal occurred. Without extended examination of the inception of the attorney-client relationship and whether attorney Lovelace here was generally or specifically retained,[2] it may be said simply that an attorney who announces that he represents a person is presumed to do so and to be authorized to act for him. This is true for both civil and criminal cases. *Department of Water and Power v. Anderson*, 95 F.2d 577 (9th Cir. 1938), *cert. dend.* 305 U.S. 607, 59 S.Ct. 67, 83 L.Ed. 386 (1938), *citing Hill v. Mendenhall*, 88 U.S. 453, 21 Wall. 453, 22 L.Ed. 616 (1874); *In re 125 Criminal Appeals*, 113 R.I. 365, 321 A.2d 294 (1974). *Accord People v. Sleezer*, 8 Ill.App.2d 12, 130 N.E.2d 302 (1955); *Minnesota v. Karp*, 84 Ohio App. 51, 84 N.E.2d 76 (1948); *Coleman v. District Court*, 120 Mont. 372, 186 P.2d 91 (1974); *Police Jury of Tangipahoa Parish v. Begnaud*, 200 La. 1020, 9 So.2d 399 (1942). Attorney Lovelace's statement that he represented appellant and wished to act for him made him appellant's counsel at that time and place.

There is no difference between counsel Lovelace's assertion of his client's right to counsel and a similar assertion by appellant himself; it is counsel's right and duty to act for his client. Patently, the attorney has no right greater than the client, but here the client's rights were mature when blocked by the police. The effect of a similar blockade of counsel has been described by the Supreme Court:

> "[It] would be highly incongruous if our system of justice permitted the district attorney, the lawyer representing the State, to extract a confession from the accused while his own lawyer, seeking to speak with him, was kept from him by the police."

*Escobedo v. Illinois*, 378 U.S. 478, 487, 84 S.Ct. 1758, 1763, 12 L.Ed.2d 977 (1964), *quoting People v. Donovan*, 13 N.Y.2d 148, 243 N.Y.S.2d 841, 193 N.E.2d 628 (1963) and *citing* Canon 9 of the ABA Canons of Professional Ethics.

Although at rock bottom the *Escobedo* decision turned on the denial of the accused's own request for counsel, the Court's reliance on the language quoted from the New York decision in *Donovan* is ultimately persuasive here. Whereas Escobedo had

---

1. There is a corollary, ethical question which is mentioned *infra*.

2. *See Associated Indemnity Corp. v. Industrial Accident Comm'n.*, 56 Cal.App.2d 804, 133 P.2d

698 (1943); *Agnew v. Walden*, 84 Ala. 502, 4 So. 672, 673 (1888); 7 C.J.S., Attorney & Client §§ 62–65.

seen his retained counsel at the station house, but the attorney was quickly "ushered" away by police, Donovan did not know that an attorney *retained by his family* was trying to see him. Despite both Donovan's ignorance that he had counsel and his failure to request assistance, a denial of the right to counsel was found. That denial was given Sixth Amendment dimensions by the *Escobedo* court which were later affirmed by the Supreme Court in *Miranda*:

> "Independent of any other constitutional proscription, this action [the blockade] constitutes a violation of the Sixth Amendment right to the assistance of counsel and excludes any statement obtained in its wake."

*Miranda v. Arizona*, 384 U.S. 436, 465, 86 S.Ct. 1602, 1623, 16 L.Ed.2d 694, 718, n. 35 (1966). *Donovan* was used to support the same New York high court's criticism of police failure to permit retained counsel access to a client facing a *prearraignment* lineup. *People v. Burwell*, 26 N.Y.2d 331, 310 N.Y.S.2d 308, 258 N.E.2d 714 (1970). *Donovan* is also a foundation of the present New York rule that: "[w]hen an accused, at any stage, before or after arraignment, to the knowledge of the law enforcement agencies, already has counsel, his right or access to counsel may not be denied." *People v. Blake*, 35 N.Y.2d 331, 361 N.Y.S.2d 881, 320 N.E.2d 625, 630 (1974).[3]

Similar results have been reached in other jurisdictions. The Supreme Court of Nebraska referred to Massachusetts, California, New Mexico and Missouri decisions in adopting the principle of yet another New York case. That case contains the best statement of the rule:

> " 'Once the police know or have been apprised of the fact that the defendant is represented by counsel, *or that an attorney has communicated with the police for* the purpose of representing defendant, the accused's right to counsel attaches*, and this right is not dependent upon the existence of a formal retainer.' The court also said: 'There is no requirement that the attorney or the defendant request the police to respect this right of the defendant.' " [Emphasis supplied.]

*State v. Johns*, 185 Neb. 590, 177 N.W.2d 580, 584 (1970), *quoting People v. Arthur*, 22 N.Y.2d 325, 292 N.Y.S.2d 663, 239 N.E.2d 537 (1968).[4] *See also Jones v. United States*, 119 U.S.App.D.C. 284, 342 F.2d 863 (1964); *Ricks v. United States*, 118 U.S. App.D.C. 216, 334 F.2d 964, n.21 (1964); *State v. Tramont*, 2 Conn.Cir. 552, 203 A.2d 123 (1964); and *Commonwealth v. Yates*, 357 A.2d 134 (Pa.1976) [Dissenting Op.]. There is also an impending breach in the long-standing rule that counsel may not be demanded before taking a drunk-driving test. Arguing that the police procedure is not "civil" but is as much an evidence-gathering procedure as custodial interrogation the Minnesota Supreme Court has identified the proffer of chemical testing as a critical stage of the proceedings in which communication with counsel must be permitted on demand. *Prideaux v. State*, 247 N.W.2d 385 (Minn.1976). *See also State v. Held*, 246 N.W.2d 863 (Minn.1976) and *State v. Kneisl*, 251 N.W.2d 645 (Minn.1977).

Nothing happened in the Supreme Court's recent reexamination of *Miranda* and the right to counsel cases to suggest a diminution of the force of the *Dunlap* rule. *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Indeed, Mr. Justice Blackman's dissenting opinion isolated the blockade in Escobedo as the cause for the deprivation of counsel there, and the Chief Justice's dissent acknowledged that "it is now thought that modern law enforcement involves pretrial confrontations at which the defendant's fate might effec-

---

**3.** The New York rule is particularly persuasive for military practice because we do not have the functional equivalent of an arraignment early in our process.

**4.** The *Johns* case is also important for its statement that the "right" *Miranda* answers are nugatory after a deprivation of counsel has occurred. "Repetitions of advisory warnings are not a satisfactory substitute for granting an unequivocal request for counsel." *Id.*, 177 N.W.2d at 585.

tively be sealed before the right of counsel could attach." The Chief Justice, of course, was speaking to the right to counsel previously said by his Court to exist at various "critical stages" of the proceedings. The concurring opinion of Mr. Justice Stevens identified the negotiations between counsel and the police for the surrender of his client as a "critical stage." The majority made it clear that they were dealing with a right to counsel problem, not a *Miranda* situation, but were able to decide their case on well established principles because Williams had been arraigned.

Here the deprivation occurred after the suspect had been taken into custody and during the preliminaries to the *Miranda* trigger. At that point a suspect has no right to warnings, nor must the Government proffer appointed counsel. However, if the suspect asks for his own, retained counsel and is refused he has been denied his Sixth Amendment rights.

## II

The *Donovan* factual situation is patently different from that in *State v. Carder*, 9 Ohio St.2d 1, 222 N.E.2d 620 (1966) where the court said:

"The determinative factor in these cases is the desire of the accused to consult with counsel, not the desire of counsel to consult with the accused."

*Id.*, 222 N.E. at 625. In *Carder* a 16½ year old murder defendant refused to see counsel retained by his family and his subsequent admissions were used against him. A district court later sustained the right under *Escobedo* to knowingly refuse to see counsel, but the key is knowledge. *Carder v. Maxwell*, 298 F.Supp. 1056 (S.D.Ohio 1969). The result has been similar with the problem of the accused who is known by the police to have counsel in an unrelated case. There it is said that a knowing and intelligent waiver depends not on what the police know, but on what the accused knows. *United States v. Crook*, 502 F.2d 1378, 1380 (3d Cir. 1974), *cert. dend.* 419 U.S. 1123, 95 S.Ct. 808, 42 L.Ed.2d 823 (1975). *See also Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 n. 10 (1975).[5]

This reliance on what the accused knows and on his actions while in custody to bottom a waiver is not without its critics. Thus, with respect to interrogation by police who knew their suspect's counsel had not been notified, the Third Circuit said that " . . . the practice is not commendable." *United States v. Cobbs*, 481 F.2d 196, 200 (3d Cir. 1973). In some other cases, courts have been satisfied that police interrogation of one known to be represented by counsel without notice to that counsel violated DR 7–104(a)(1) of the ABA Code of Professional Responsibility (1969). *United States v. Thomas*, 474 F.2d 110 (10th Cir. 1973), *cert. dend.* 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973). Such holdings are consistent with the Supreme Court's citation of Canon 9 in *Escobedo, supra*, and with Opinion 95, ABA Opinions of the Committee on Professional Ethics and Grievances (1967) which found that a city attorney's staff relationship to city police generated ethical responsibilities for their conduct. Whether a given military case presents an ethical violation along with or instead of a deprivation of counsel is for separate determination. *United States v. Tomchek*, 2 M.J. 813 (A.C.M.R.1976).[6]

## III

This appellant was denied the assistance of counsel guaranteed by the Sixth Amend-

---

**5.** The right to counsel, whether on demand of accused or counsel, is not absolute. Thus, if the only proceedings is the taking of hair samples or fingerprinting, courts will perceive no threat to an unrepresented person's basic rights to a fair trial and the effective assistance of counsel. *State v. Meyers*, 24 Or.App. 561, 546 P.2d 771 (1976), *citing United States v.*

*Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

**6.** Consider paragraph 44*h*, MCM 1969 (Rev) which requires trial counsel to deal with the accused only through "any counsel the accused may have."

ment. That right is available to him in trials by court-martial. However, the error affects only Charge I; appellant was delivered to his counsel after the incident criticized here and the subsequent interrogations were about unrelated matters. His waiver at the second interrogation was knowing and intelligent, and his admissions were not tainted by the earlier error.